C. H. WELCH v. JOSIAH CHEEK.

*Action for Damages—Malicious Prosecution—Nolle Prosequi—*
*Probable Cause—Burden of Proof.*

1. Where a warrant by a Justice of the Peace is dismissed by the prosecution, it is a sufficient determination of the proceeding to warrant an action for malicious prosecution.

2. Where a criminal prosecution is dismissed under an agreement between the parties by which the party prosecuted is to pay part of the costs, the burden, in an action for malicious prosecution, is not on the defendant to show probable cause.

CIVIL ACTION, tried at Spring Term, 1894, of RANDOLPH Superior Court, before *Battle, J.*

The action was for malicious prosecution and false arrest, charging that the defendant had prosecuted the plaintiff before J. P. Phillips, a Justice of the Peace, for the crime of embezzlement.

There was evidence tending to show that in September, 1889, the plaintiff C. H. Welch, purchased guano from H. S. Miller & Co., of Newark, N. J., and for the price of the same a note was executed to them for $234.56, and interest from November 1, 1889, by said C. H. Welch as principal, and Thomas F. Cheek and the defendant Josiah Cheek as sureties. The said sureties contended that at the time they signed the note the plaintiff promised them that the money collected by him from parties purchasing the guano from him should go to pay said note, and that he had violated this promise by applying money collected as aforesaid to the payment of a mortgage debt he owed one John R. Lane. It was on this account that the criminal prosecution for embezzlement was instituted by the defendant against the plaintiff.

The defendant insisted that he bought the guano absolutely from H. S. Miller & Co., and that there was no trust whatever affecting the same, or the proceeds of the sale of the same, and denied that he had ever done anything to give the sureties any ground to think that he intended to leave them in the lurch. The plaintiff Welch having been arrested and carried before J. P. Phillips, Esq., a Justice of the Peace, both sides desired the presence of said John R. Lane, and they waited some time till he arrived at the place of trial.

The following is an extract from the testimony of said J. P. Phillips, who was examined as a witness for the plaintiff:

" Mr. Cheek, the defendant, came to my house on the night of December 2, 1890, and made the affidavit. It may have been after midnight. I had retired before he came and was asleep. The warrant was delivered to Mr. Cheek. It was returned by J. A. Brady, then constable of Brower township,

about 10 A. M., December 3, 1890. The officer's return was that he had executed the warrant by arresting the said C. H. Welch, who was brought before me at Josiah Cheek's three or four miles from my house. This was at the request of Mr. Cheek, who was unwell, and for the convenience of other witnesses, and of Mr. Welch, too. No particular hour was fixed for the trial. I went there at 10 A. M. I never did try the case at all. The defendant (that is, the plaintiff herein, Welch), was released some time in the afternoon, about 2 o'clock or later. I found him there in the custody of the officer at 10 A. M. Three or four others were there. None of these parties had been subpœned as witnesses, except perhaps, Thomas F. Cheek. Something was said there at the defendant Cheek's about a note for guano given by Welch and others. Colonel Lane (John R. Lane) finally came and asked for a private interview with Welch, Cheek, Brady, and, I think, Lowdermilk. I heard it said that Welch had taken money collected for guano and applied it to pay a mortgage he owed Lane. Then Lane having asked for a private interview they went off into a room together. After awhile they called me in. Colonel Lane drew up and signed a certain writing. There was no further prosecution. Welch paid part of the costs and the case was dismissed."

John R. Lane, a witness for the plaintiff, testified as follows: "I have known the plaintiff for twenty years; know his general character, and it is reasonably good. I was subpœned December 3, 1890, at 8 A. M., in *State against C. H. Welch.* I got there to Josiah Cheek's at 12 M., and left between 2 and 4 P. M. I saw nothing of any arrest or discharge from arrest. I explained the matter to them, telling them that it was a State case, that there had been no trial, and that Welch ought not to be made to pay the costs. I understood that the costs were compromised and that plaintiff Welch paid the same. All of these gentlemen were friends of mine, and I was interested in the financial condi-

tion of all of them.  I knew nothing about the note.  I told them at the conference that Welch was doing his best to pay the note; that he had proposed to me to take $162 and hold it for him till the note became due, and to pay him interest on it.  I declined to do this, and told him to place the money in bank in Greensboro.  He came to me on November 6, 1890, and said he had not heard anything of his note. He asked me to write to the bank and find out what had become of it.  I did so, and heard in reply that the note had been sent back to the owners of it, 'for want of funds.' When I told Welch this (he having in the bank at this time to his credit the $162 aforesaid) he became much excited, and wanted to know what had become of his money, the receipt of which, by the bank, had not been acknowledged. The bank had not been notified of his address.  I told him not to be uneasy, to give me a check for the money and I would be responsible to him for the same.  He did give me a check accordingly, and the money I collected on it was his money.  Hearing that H. S. Miller & Co. were in financial straits, I advised Welch not to send them any money on the note till he ascertained definitely where it was.  They wrote in answer to a letter to them that the note was there in bank. Mr. Welch again wanted me to pay him interest on the $162, which I refused to do.  Then he paid me what he owed me to save interest, and he got a check from me payable to H. S. Miller & Co. for the balance I had in hand for him November 25, 1890, and said check was forwarded to them.  The balance then due on the note was $115.  They were notified to send the note either to C. C. Cheek or myself, and it would be paid in thirty days, and they replied that that was satisfactory.  At that conference, I have already mentioned, John Brady said to me, ' Colonel, you have had the handling of the money, I think you ought to see to it that the ' boys ' are kept harmless.  We do not wish to send Welch to the penitentiary or to give him any trouble.'  John Brady is a great

friend of mine, and I at once agreed to do what he suggested. A paper was accordingly drafted and signed and sealed by me, whereby I agreed to save the sureties harmless. Everything was pleasantly arranged, and I went off well satisfied. Welch did not recollect where the note was payable. On the debt he owed me he paid $80 to stop interest. After I had given my obligation as aforesaid, I sent for the note and paid it."

J. P. Phillips, Esq.. was introduced as a witness for the plaintiff, and testified, that at the instance of the defendant, and upon his affidavit, he had issued a warrant for the arrest of the plaintiff, and that the plaintiff had been arrested by virtue of said warrant and brought before the Justice at 10 o'clock A. M., December 3, 1890, for trial; that there was no trial, and the plaintiff (who was defendant in the warrant) was released some time in the afternoon, about 2 o'clock, or later, without a trial. Welch paid a part of the costs, under protest, and the case was dismissed.

The plaintiff proposed to ask the witness the contents of the warrant. The defendant objected to the proving of the contents of the warrant in this way, insisting upon the production of the warrant.

Plaintiff had given defendant notice that he would offer testimony to show loss of the warrant, and would offer secondary evidence.

Witness Phillips testified that he did not have the warrant; that he had returned the warrant to the Clerk as required by law, and that the last time he saw it it was in the hands of Judge McIver, who presided at the trial of a criminal action against the defendant.

The Clerk of the Court, Mr. Bradshaw, then testified that he recollected having the warrant in his office; that he had made diligent search in his office for it among the papers returned by Justices of the Peace, and had made thorough search in his office, and that he could not find the warrant

in his office, and that the last time he saw it it was in the hands of the Judge at the trial of a criminal action against defendant.

The plaintiff testified that he had had the warrant before the trial before Judge McIver; he had produced it at said trial, and that was the last time he ever saw it or knew where it was.

A paper-writing is shown the witness J. P. Phillips by the plaintiff's counsel, which the witness identifies and swears is the affidavit made by the defendant Cheek, and the same on which he issued the warrant for the arrest of the plaintiff.

The affidavit was then offered in evidence and read to the jury. It is dated December 3, 1890. A copy of said affidavit is attached as a part of the case on appeal, and is in the following words, to-wit:

"Josiah Cheek, being sworn, deposes and complains before the undersigned, that one C. H. Welch, of Randolph County, did, on or about the 15th day of November, 1890, fraudulently convert to his own use a certain amount of money, viz., about one hundred dollars, with intent to defraud and embezzle Josiah Cheek, T. F. Cheek and others.

"JOSIAH CHEEK."

The preliminary facts were found and decided by the Court to exist for the purpose of admitting secondary evidence of the contents of the warrant. The notice served on the defendant by the plaintiff, heretofore referred to, was then read and held to be sufficient, a copy of which will be found in the record. The Court found that diligent search had been made by the Clerk for the missing instrument, and the same not being found, admitted secondary evidence.

The defendant objected. Objection overruled, and defendant excepted.

Witness Phillips then testified that he did not recollect the

exact language of the warrant, but as he remembered it was in substance the same as the affidavit of the defendant upon which the warrant was issued; that he issued the warrant in pursuance of the affidavit. The substance of the warrant was about the substance of the affidavit. It was directed to the Sheriff or other lawful officer, and commanded him to arrest defendant Welch and bring him before me to answer the charge aforesaid. The warrant was signed by me as Justice of the Peace, and a seal after my signature. The warrant was delivered to Mr. Cheek. It was returned before me on December 3, 1890. The officer returned the warrant executed, and he brought the defendant Welch before me. The return was made at 10 A. M. I never did try the case at all. Defendant Welch was released sometime in the afternoon. Welch paid part of the costs, as before stated, but he paid it under protest. No judgment rendered, and the case was dismissed.

Both parties introduced testimony tending to support their respective contentions. Among other things, the plaintiff offered evidence of his good character, and also evidence to show bad and unfriendly feeling toward him on the part of the defendant, at the time of the arrest.

The issues set out in the record proper were submitted to the jury.

His Honor instructed the jury, among other instructions, as to other legal questions: " That if they believed the testimony offered and introduced by the plaintiff, that the charge contained in the warrant was that of embezzlement," to which the defendant excepted.

And at the request of the plaintiff the Court gave the following, among other special instructions:

" If the jury believes from the testimony that the defendant in this action voluntarily discontinued his prosecution of the plaintiff before the Justice, then it is a positive act and a relevant fact tending to show want of probable cause.

" That if the jury believes from the evidence that the defendant authorized the discharge of the plaintiff, it is not only a relevant fact tending to show want of probable cause, but places upon the defendant the burden of proving there was no probable cause."

The defendant excepted, upon the ground that however the special instructions might be as a general proposition, as to the facts of this they were inapplicable and misleading, and that in this connection the jury's attention should have been called to the fact that the prosecution, as the defendant claims, ceased by reason of the agreement with the plaintiff, and that for this reason the law as embodied in the instructions asked and given should not have been given.

There was a verdict for the plaintiff.

Plaintiff moved for judgment, and defendant moved for a new trial.

His Honor gave judgment for plaintiff, and the defendant appealed.

*Mr. L. M. Scott,* for plaintiff.

*Messrs. J. T. Morehead* and *J. N. Wilson,* for defendant (appellant).

PER CURIAM : The dismissal of the warrant by the Justice of the Peace with the consent of the defendant was a sufficient proceeding to authorize the plaintiff to sustain this action, and ordinarily such a determination would place the burden upon the defendant to show probable cause. Where, however, the proceeding is dismissed by virtue of an agreement between the parties, the principle does not apply. There was testimony in this case tending to show some arrangement between the parties, under which the plaintiff paid a part of the costs and was discharged. In Massachusetts it is held that " where a *nolle prosequi* is entered by the procurement of the party prosecuted, or by his consent, or by way

of compromise, such party cannot have an action for malicious prosecution." *Langford* v. *Railroad Co.*, 144 Mass., 431, and the cases cited. It is unnecessary to go to this extent in the present appeal, but we are of the opinion that in view of the testimony as to the agreement, there was error in charging the jury, without qualification, that the burden of showing probable cause was on the defendant.

New Trial.