D. A. POWELL AND WIFE v. THE CHAMPION FIBER COMPANY.

(Filed 22 December, 1908.)

**1. Arrest—Restraint—Evidence Insufficient.**

To constitute sufficient evidence of such personal restraint as will amount in law to an arrest it must be more than an unasserted purpose and intention; and when the evidence only tends to show that defendant's employees threatened the arrest* of *feme* plaintiff's husband, in his absence, while she was on defendant's premises, and said they would give her the warrant of arrest and permit her to follow him, upon payment of two dollars on account of a stove her husband had bought and left in its house, which she accordingly paid, it does not constitute such restraint as will amount to an arrest in law, when she made no attempt to leave under circumstances altogether favorable.

**2. Same—Principal and Agent—Corporations—Superintendent.**

An agent authorized to collect for his principal has no implied authority, in his endeavor to collect, to arrest the debtor upon warrant, or put such restraint upon his wife as will amount to an arrest in law; and the principal is not responsible for such unauthorized or unratified acts. This principle applies to a corporation, as principal, acting through its superintendents as agents.

CLARK, C. J., dissenting, *arguendo.*

ACTION tried before *Peebles, J.,* and a jury, at November Term, 1907, of BURKE.

This action was brought by the *feme* plaintiff to recover damages for an alleged false and wrongful arrest and detention. S. Montgomery Smith and W. H. Reynolds were named as defendants in the summons, but were never served, and the case proceeded to trial as to the Champion Fiber Company. There was judgment of nonsuit at the conclusion of the evidence, and plaintiffs appealed.

*E. B. Cline* and *A. A. Whitener* for plaintiffs.
*S. J. Ervin* and *Smathers & Morgan* for defendants.

BROWN, J. The evidence tends to prove that D. A. Powell, the plaintiff's husband, was an employee of defendant company, lived in one of its houses and owed defendant $11 for a stove; that, becoming dissatisfied, he quit defendant's service, left the

stove in the house he had lived in, packed his household goods in a wagon, and started walking ahead on the road to Canton, leaving his wife and child on the wagon to follow after him. The wagon not overtaking him, he turned back, and shortly thereafter met the wife following with the wagon.

The *feme* plaintiff testified that after her husband had gone on ahead, leaving the wagon in the defendant's commissary yard, and after the wagon had stood there about two hours, "I spoke to Montgomery Smith first. He was close to the wagon, I was on the ground. I asked him why it was that he detained me; that the stove was in the house and there was nothing in the wagon that belonged to him. He said they did not loan out things to accommodate people. He then walked off and went back to the end of the wagon. Harry Reynolds came up."

At this point the court permitted plaintiff's counsel to state what they proposed to prove as further tending to show the liability of the defendant. Counsel stated that they proposed to show that Reynolds was assistant superintendent in charge of the commissary; that one Huggins Smith, the superintendent, and Reynolds had the paper writing marked "A" in their possession (the paper writing is a warrant for arrest of D. A. Powell, signed by R. L. Ray, J. P.); that they stopped Mrs. Powell in the yard and Reynolds told her in the presence of Smith that they were going to arrest her husband and send him to jail, and were going to hold her until the officers came back with her husband; that they then went and looked at the stove in the house and returned to the wagon, when Reynolds said if Mrs. Powell would pay $2 they would surrender her the warrant for her husband and she could go; that she paid the $2 (for the use of the stove, evidently) and drove on her way.

Upon intimation from the court that the plaintiff could not recover, she submitted to a nonsuit and appealed.

There are two reasons why the plaintiff cannot recover of defendant upon this state of facts:

1. There is not sufficient evidence of such personal restraint as will amount in law to an arrest. Her person was not touched or her liberty restrained by any kind of force or show of force. The conduct of Smith and Reynolds was certainly not to be

commended, but there is nothing in it to indicate any actual forcible detention of plaintiff. A mere unasserted purpose or intention to do so is not sufficient. In the second edition of the American and English Encyclopedia of Law, Vol. 12, p. 734, it is stated that, "In order to constitute an unlawful imprisonment where no force or violence is actually employed, the submission must be to a reasonably apprehended force, the circumstance merely that one considers himself restrained in person not being sufficient to constitute a false imprisonment unless there is in fact a reasonable ground to apprehend a resort to force upon an attempt to assert one's liberty." The evidence does not show that the *feme* plaintiff in this case in any way attempted to assert her liberty nor to cause her wagon to move, but that she waited without any reasonable apprehension of force, or else because her driver did not see fit to move the wagon.

It is held by all the authorities that the act relied upon as an unlawful arrest in order to constitute false imprisonment must have been intended as such and so understood by the party arrested, or there can be no imprisonment. 12 Am. and Eng. Enc., p. 736, where all the cases are collected.

The evidence does not show that the *feme* plaintiff considered herself under arrest, or that any such invasion of her personal liberty was put into effect. While Reynolds may have told the *feme* plaintiff he was going to detain her, he took no steps to do so. He and Smith at once walked off to the house and examined the stove and on their return settled the controversy. So far as the evidence discloses, Mrs. Powell could have driven off at any moment.

2. There is no allegation in the complaint, or any evidence to support such allegation had it been so alleged, that this tort was committed by Reynolds and Smith within the scope of their authority in furtherance of the master's business, or that the master ratified and affirmed their acts.

It was the duty of Smith to collect debts due the defendant, and if the husband was indebted to defendant, to use due diligence in collecting such debt, but he was not authorized to arrest the wife on account of the debt any more than a stranger.

The case, we think, comes within the principles so clearly stated by *Justice Hoke* in *Sawyer v. Railroad,* 142 N. C., 1, and

POWELL *v.* FIBER Co.

by *Justices Walker* and *Connor* in their dissenting opinions in *Stewart v. Lumber Co.,* 146 N. C., 111 and 85. While the writer differed from his last-named brethren in the application of the law as laid down by them to the peculiar character of the *Stewart case,* which dealt with conditions and circumstances attending the operation of locomotive engines, their opinions and the authorities cited in them are convincing that, upon well-settled principles, the plaintiff cannot recover of the defendant upon the facts of this case.

Affirmed.

CLARK, C. J., dissenting: This action is brought by the *feme* plaintiff (her husband being joined as plaintiff) against the defendant, a foreign corporation doing business at Sunburst, Haywood County, for false arrest, false imprisonment and forcible and illegal detention of her person. It was in evidence that her husband was in the employment of the defendant company; that he went to its superintendent and told him that he was unwilling to sign certain papers that the superintendent required, that he was going to leave, that a stove he had bought from the company the week before he had left in company's house, that he would pay for its use and wanted a settlement; that he applied twice the next day to superintendent for a settlement, but being unable to get it (he returned the key of his room, in which he had left the stove) and having boxed up his household goods, he put them in the wagon to carry them to another town. Having put his wife and five-year-old child in the wagon to ride, he started on ahead on foot. It was a rainy day. When the wife was ready to start, the superintendent and assistant superintendent of the company detained the wagon, and would not let the *feme* plaintiff leave. There had been no warrant or any paper served on her or her husband.

The plaintiff further offered to prove that these two officers and another man, who was an employee of the defendant, told the *feme* plaintiff that they were going to arrest her husband and send him to Waynesville jail, and were going *to hold her* until the officer came back with her husband; that the assistant superintendent went and looked at the stove, and when he came

back told Huggins, one of his employees, that if the *feme* plaintiff would pay $2, to give her the warrant and let her go.; that she then gave Huggins a $5 bill, he gave it to the assistant superintendent, who put it in the company's cash drawer and gave Huggins $3, who then suffered *feme* plaintiff to leave after having been detained two hours in the defendant's yard. When three men tell a defenseless woman they are going to "hold her" and she does not move, it is an illegal arrest.

On this evidence, the court intimating that plaintiff could not recover, she took a nonsuit and appealed. According to this evidence, the *feme* plaintiff with her child, wagon and household goods were detained for over two hours in the defendant's yard, against her will, by the two chief officers of the defendant, aided by an employee, and not permitted to leave till she paid the company a sum which these three men demanded of her. This detention was without any excuse. It is not contended that in her possession or in the wagon there was any property of the company. There was superior force—three men, two of them the highest officers, acting for the company, against a defenseless woman and child. She was "held up" for two hours until she was told the sum of money on payment of which she would be allowed to proceed, and until she paid it. Such conduct was false arrest and false imprisonment, because by force and without authority. 19 Cyc., 319. Forcing the *feme* plaintiff to pay the company money before she was allowed to depart was little short of "highway robbery," unexplained by any evidence. The defendant should have opportunity to show its version of this extraordinary occurrence, and the *feme* plaintiff is entitled to have a jury to pass upon the truth of the evidence.

"False imprisonment is simply any unlawful detention of the person." 12 A. and E., 721. One who "interferes with the freedom of locomotion of another" without legal authority does so at his peril. 19 Cyc., 320. If such interference is unlawful, "neither good faith nor provocation nor ignorance of the law" (neither of which are here shown) is a defense in a civil action; but if there is malice it aggravates the damages. 19 Cyc., 319, 320; 12 A. and E., 724, and cases there cited. "Absence of malice is no defense in a civil action." *Neal v. Joyner*, 89

N. C., 287. The detention by mere threats or show of superior force, if unlawful, constitutes false imprisonment. *Martin v. Houck,* 141 N. C., 317.

There was evidence which, uncontradicted, made the corporation liable for the conduct of its officers. *Lovick v. Railroad,* 129 N. C., 427; *Kelly v. Traction Co.,* 132 N. C., 368. The detention was on its premises, by its officials, for the purpose of collecting money, which was paid into its treasury, and is there still, so far as the evidence shows.