ROSA WILSON AND HUSBAND v. SINGER SEWING MACHINE COMPANY AND J. A. LIVERMAN.

(Filed 20 September, 1922.)

1. Trespass—Evidence—Verdict.

    Upon the trial of an action for assault upon the person and trespass upon the property of the *feme* plaintiff, there was evidence that the agent of the defendant called at the house to collect a deferred payment under a vendor's lien upon a sewing machine, refused to wait therefor until the return of the plaintiff's husband, and resisted her efforts in opposition: *Held,* sufficient to sustain a verdict awarding damages to the plaintiff.

WILSON v. SEWING MACHINE CO.

**2. Principal and Agent—Trespass—Torts of Agent—Damages.**

Where the defendant's agent authorized to collect deferred payment under a vendor's lien in the sale of a sewing machine, uses force in taking the machine away upon the nonpayment of the amount due, it is a tort performed in the course of the agent's employment for which the principal is answerable in damages.

**3. Instructions—Statutes—Expression of Opinion of Judge—Prejudice—Racial Distinctions.**

Where the presiding judge instructs the jury, who are all white men, of their duty to give exact justice between a colored plaintiff and a white defendant, without considering the color line, but specifically and clearly disclaims any opinion of his own upon the facts in evidence, it is not objectionable, as an expression of an opinion by the judge, forbidden by the statute.

APPEAL by defendants from *Bond, J.,* at February Term, 1922, of BEAUFORT.

This action is for assault upon the person and trespass upon the property of the *feme* plaintiff. She had purchased upon conditional sale, on the installment plan, from the defendant sewing machine company, a machine on which she had made sundry payments to divers agents of the sewing machine company during a period of four years. The defendant had its office in Washington, N. C., with an agent, its co-defendant, J. E. Liverman, in charge, and the plaintiff testified that she had seen Garris in their office and paid him three or four times on the machine. That in June, 1919, this Garris, with whom she had dealt at the sewing machine company's office, came to her bedroom while she was cleaning up and knocked at the door, and she found him standing there. That he asked her if she had any money for him, to which she replied that she did not have any that day, but if he would come that night when her husband was at home she would get some money from him, to which Garris replied: "No, I will have to have my money or the machine."

She testified that Garris then proceeded with vile words to curse and abuse her; that she begged him not to do it, but he kept on; she says that she then left him and proceeded to clean up her room. She heard him move the machine and throw her Bible on the floor. She again begged him not to take the machine away, but he cursed her some more, and then took hold of one end of the machine, whereupon she took hold of the other, she pulling one way and he the other. Finally Mr. Cox came over to stop Garris from cursing and using profane language in the hearing of his wife, and then Garris wanted to fight Cox. She testified that under the violent threats and conduct of said Garris she became faint and had an attack like heart trouble; that she had to have a doctor that night, and all the next week, and after that was confined for a time

to her bed. There was evidence in corroboration of the plaintiff as to what occurred. Verdict and judgment for plaintiff; appeal by defendants.

*Wiley C. Rodman for plaintiff.*
*E. A. Daniel and F. S. Spruill for defendants.*

CLARK, C. J. The agency of Garris and his misconduct the jury found in favor of the plaintiff. The acts complained of were in the scope of his employment. In 2 C. J., 848, sec. 533, it is said: "The liability of the principal for torts committed by him is not limited to torts which he has expressly authorized or directed; he is liable for all the torts which his agent commits in the course of employment; and if he commits a tort in the course of his employment, the principal is liable therefor even though he was ignorant thereof, and the agent in committing it exceeded his actual authority or disobeyed the express instruction of his principal."

In 2 C. J., 849, sec. 534, it is further said: "In accordance with the above rule, a principal may be held civilly liable to a third person where his agent, while acting within the course or scope of his real or apparent authority, is guilty of assault and battery, conversion, trespass, etc., or wrongful levy"; and *ibid.*, sec. 536: "In order to render the principal liable for his agent's torts, they must have been committed while carrying out the principal's business; and it may be stated broadly that the tort of an agent is within the course of his employment where the agent in performing it is endeavoring to promote his principal's business within the scope of the actual or apparent authority conferred upon him for that purpose."

There was evidence which justified the finding of the jury that Garris was the agent of the defendant, pursuing his regular business of collecting money from the plaintiff, and that he committed an assault upon the plaintiff and trespass upon her premises, and the misconduct alleged on this occasion, and that the defendant was liable. *Jackson v. Tel. Co.,* 139 N. C., 347.

The defendant relied earnestly and chiefly, indeed, upon the following language in the charge: "Now, it appears that the plaintiff is a colored woman. Her rights are being passed upon by a jury with twelve white men on it, and a white man on the bench. Notwithstanding this fact, it is a matter of serious responsibility to us, because I firmly believe in the fact that this is a white man's government, that he alone ought to hold its offices, run its courts, sit in its legislatures, and make the laws and enforce the laws for the benefit of all the people. Notwithstanding that fact, it is a matter of serious responsibility to us that when the

rights of property and personal liberty of colored people are being passed on in the courthouse with no representative of their race and color on the jury, or on the bench, it is a matter of most serious responsibility that we should be absolutely fair to them in passing on their rights, and forget for the time being that the color of their faces is different from yours and mine. Anything else than that would make a farce of the so-called administration of justice. The courthouse is no place for race prejudice in passing on their rights. There are only thirteen men in this courthouse who are, gentlemen, tied by a very solemn oath, and upon these men alone rests the adjustment of the rights of the people who are litigating the matters in the court, the twelve are the jurors, and the thirteenth man is the judge. I don't mean to say that this woman is entitled to win this case; that is absolutely foreign to my thoughts, but I have simply laid down some of the general propositions to commit us to an appreciation of this fact, that is, that there ought to be no color question in the courthouse. The case ought to be tried exactly as if all of us were of the same color. If the woman has sustained the burden of proof, which is upon her, and has shown that she has a right to recover, she ought to recover without regard to the color of her skin. Nothing is further from my thoughts than meaning to say that a colored person has any more right to recover than a white person, and the verdict should be found according to the facts, as the facts are found to be."

Whether or not this language was desirable, or necessary, to impress upon the jury the requirement of absolute impartiality is a matter that was committed to the discretion of the judge. It could be objectionable only as a matter of law if it was calculated to bias the jury in favor of the plaintiff, but as the record states, the judge expressly cautioned the jury that he was not intending to indicate any opinion in favor of the plaintiff. He said, "Nothing is further from my thoughts than meaning to say that a colored person has any more right to recover than a white person, and the verdict should be found according to the facts, as the facts are found to be." This a jury of ordinary intelligence could not possibly misunderstand, and we cannot find that they were prejudiced by the charge.

A similar exception to the charge of the same judge that on a trial where one party is white and the other is colored the jury should be fair and just and give them a fair and impartial hearing, regardless of the color of the litigants, was held to be no ground for error in *McLaurin v. Williams,* 175 N. C., 293.

Unless there is error of law in the charge prejudicial to the appellant, he cannot assign as error merely the language of the judge's charge, nor

can we review him. That is a matter left to his judgment. As Sheridan said, in the House of Commons—a demurrer cannot be entered to a trope nor a special pleading to a figure of speech.

A very similar case to this was *S. v. Goode,* 130 N. C., 651, where the white agent attempted by violence to take furniture which had been sold to a colored woman on the instalment plan. In that case, as in this, the woman asked the agent to return when her husband got back that night and she would pay, but in that case, as in this, he demanded immediate payment and attempted to take the property by force. The woman resisted and a tussle ensued. There was this difference, that the agent in that case got the worst of the contest, as the woman used a baseball bat on his head, and the agent indicted the woman for assault and battery. The facts as set out in that case are amusing and interesting. Upon them the presiding judge at the trial told the jury that the defendant was upon her own testimony guilty of using excessive force on the prosecuting witness, and instructed the jury to find the defendant guilty. This Court gave a new trial, for that whether there was excessive force was a question for the jury and not for the court; and in the opinion discusses practically the same questions that arise here, though the position of the parties was reversed, the agent there having received more pummeling than pence, and the woman being indicted instead of, as in this case, bringing her action for assault and battery and trespass.

No error.