J. M. DICKERSON v. THE ATLANTIC REFINING COMPANY, E. R. SWAIM AND F. G. BRADY.

(Filed 15 June, 1931.)

1. **Malicious Prosecution A a—Elements necessary to be proved in order to recover in action for malicious prosecution.**

   To make out a case of malicious prosecution, the plaintiff is required to allege and prove that the defendant instituted or participated in a proceeding against him maliciously, without probable cause, which ended in failure.

2. **Malicious Prosecution A d—Nolle prosequi with leave is a sufficient termination of prosecution to support action for malicious prosecution.**

   A *nolle prosequi* with leave is sufficient termination of a criminal prosecution to support an action for malicious prosecution based thereon.

3. **Malicious Prosecution A c—Definition of probable cause.**

   Want of probable cause may be inferred from the facts and circumstances, and it does not depend upon the guilt or innocence of the accused, but upon whether the apparent facts are such as to lead a discreet and prudent man to believe that a crime has been committed by the person charged.

4. **Same—Proof of a collateral purpose in prosecution is sufficient to establish a prima facie want of probable cause.**

   Evidence that the chief aim of a prosecution was to accomplish some collateral purpose, as the collection of a debt or the obtaining of possession of property, is competent to show want of probable cause, and is sufficient to establish it prima facie.

5. **Malicious Prosecution A c—Malice may be inferred from want of probable cause.**

    In actions for malicious prosecution malice may be inferred from want of probable cause.

6. **Malicious Prosecution B c—Evidence held sufficient to take the case to the jury in this action.**

    Where in a civil action to recover damages for malicious prosecution there is evidence that one of the defendants swore out a warrant for the arrest of the plaintiff for issuing an alleged worthless check, and that he did so at the instance of the other defendant, who sought to have the cashier of the bank place "an insufficient funds tag" on it, and who afterwards told the plaintiff that they had made a mistake and wanted to have the warrant withdrawn, and that thereafter the check was paid upon presentation, and the action *nol prossed* without the plaintiff's knowledge or consent, is *held:* sufficient to establish a prima facie case against the defendant swearing out the warrant, and to permit the inference that the defendants were acting in concert, and should have been submitted to the jury under correct instructions from the court.

7. **Evidence N a—A prima facie case is sufficient to take the question to the jury.**

    Where a prima facie case has been made out it is sufficient to carry the case to the jury and to warrant a recovery, but it neither insures nor compels a recovery, the question of whether the necessary facts have been established being for the jury.

8. **Principal and Agent C d: Master and Servant D b—Master or principal is liable for acts of servant or agent in scope of his duties.**

    Where an agent or servant causes injury to a third person while acting in the line of duty and exercising the functions of his employment, the principal or master is liable therefor, without reference to whether the intent of the agent or servant was good or bad.

9. **Same—Whether act is within scope of duties of agent or servant depends upon whether he was then engaged in service of employer.**

    Whether an act causing injury to a third party is within the scope of an agent's or servant's employment depends upon whether the agent or servant at the time is engaged in the performance of the duties he is employed to perform, and not upon intent to benefit the employer or protect his property.

10. **Corporations G i—Corporation is liable for torts of servants or agents committed in the course of their employment.**

    A corporation may be held liable for the negligent or malicious torts of its employees, servants or agents when committed by them in the course of their employment and within its scope, precisely as a natural person.

11. **Principal and Agent C d: Master and Servant D b—Whether prosecution for issuing worthless check was within scope of authority held for jury.**

    While the criminal prosecution of an offender is not ordinarily within the scope of an agent's or servant's authority, a distinction is to be made

where the prosecution could have no effect other than the punishment of the offender and those cases where it is instituted to recover the employer's property or protect his business, and where the evidence tends to show that the agents or employees of a refining corporation were acting within the scope of their authority in making a sale of gasoline and in accepting a check payable to the corporation in payment of gasoline sold, and in presenting the check for payment: *Held,* in an action for malicious prosecution, the question of whether the refining corporation is responsible for their act in swearing out a warrant for the arrest of the purchaser of the gasoline for giving an alleged worthless check, either upon the theory of authorization or ratification, is for the determination of the jury, and a directed verdict in favor of the defendant is error.

APPEAL by plaintiff from *Sink, Special Judge,* at September Term, 1930, of GUILFORD.

Civil action for malicious prosecution.

It appears from the record that on Saturday morning, 8 February, 1930, the plaintiff, who is president and general manager of the King Cotton Garage, Inc., ordered from the Atlantic Refining Company, Inc., 100 gallons of gasoline to be delivered during the day. The order was given to and received by E. R. Swaim, manager in charge of the Greensboro office of the Atlantic Refining Company, Inc., and delivery was made about 5 p.m. that afternoon by F. G. Brady, truck-driver and deliveryman for the said Refining Company.

In payment of the gasoline the plaintiff handed to Brady a check for $18.20, made payable to "The Atlantic Refining Co.," and signed "King Cotton Garage, Inc., by J. M. Dickerson, Pres." Brady hesitated to accept the check, but on being assured by the plaintiff that it was all right, he decided to take it. Plaintiff testified: "I was not prepared at that time to give him the cash, but I said 'I will be very willing to have my men and myself get the gas and return it to you if you don't want to receive the check.'"

Within a couple of hours thereafter Brady returned with the check and said he would have to have cash for the gasoline. "He then got very sore about it." Plaintiff told him the check was all right and would be paid upon presentation; that he had on hand only enough money to cover his pay-roll, but that if he would bring the check back later in the evening he thought he would have sufficient cash by 11 o'clock that night to take it up.

Plaintiff was arrested about 8 p.m. that evening on a warrant sworn out by F. G. Brady charging him with uttering a worthless check—the check above mentioned—in violation of chapter 62, Public Laws 1927. The plaintiff was held in custody several hours until he gave a cash bond for his appearance before the justice of the peace on Tuesday thereafter, 11 February, at 3 o'clock p.m.

On the following Monday morning plaintiff went to the bank at 9 o'clock sharp and made a further deposit of $30 as a certain protection to the check which he had given to Brady for the Atlantic Refining Company, Inc., the previous Saturday afternoon. He had money in the bank at the time—amount not stated—to the credit of King Cotton Garage, Inc. When the plaintiff arrived at the bank he found Mr. Swaim there and overheard a request on his part that the bank put "an insufficient funds tag" on the check. This the teller declined to do. Two days later, 12 February, the check was presented to the bank for payment by E. R. Swaim and was paid upon presentation.

At 11 o'clock on the morning of 10 February, E. R. Swaim saw the plaintiff and said to him: "We made a mistake; we want you to come up with me and have this warrant withdrawn." This the plaintiff declined to do. The constable came to plaintiff's place of business at 6 o'clock the same day and offered the plaintiff his cash bond back, which he declined to accept. Plaintiff appeared at the magistrate's office at the time set for the hearing, 3 o'clock p.m., 11 February, and found that "the case had been *nol pros'd,* with leave." This was without his procurement or consent.

There was evidence that the plaintiff's reputation and character had been injured by the prosecution in question.

At the close of plaintiff's evidence, the trial court being of opinion that the plaintiff had failed to make out a case against any of the defendants, directed a verdict in their favor and entered judgment accordingly. Plaintiff appeals, assigning errors.

*Benbow, Hall & Wilson for plaintiff.*
*Frank P. Hobgood for defendants.*

STACY, C. J. To make out a case of malicious prosecution, the plaintiff is required to allege and to prove that the defendant instituted or participated in a proceeding against him maliciously, without probable cause, which ended in failure. *Wingate v. Causey,* 196 N. C., 71, 144 S. E., 530; *Bowen v. Pollard,* 173 N. C., 129, 91 S. E., 711; *Carpenter Co. v. Hanes,* 167 N. C., 551, 83 S. E., 577; *Humphries v. Edwards,* 164 N. C., 154, 80 S. E., 165; *Stanford v. Grocery Co.,* 143 N. C., 419, 55 S. E., 815; *R. R. v. Hardware Co.,* 138 N. C., 174, 50 S. E., 571; *S. c.,* 143 N. C., 54, 55 S. E., 422; *Ely v. Davis,* 111 N. C., 24, 15 S. E., 878; *Jerome v. Shaw,* 172 N. C., 862, 90 S. E., 764; 18 R. C. L., 11.

A *nolle prosequi* with leave is sufficient termination of a criminal prosecution to support an action for malicious prosecution based thereon. *Winkler v. Blowing Rock Lines,* 195 N. C., 673, 143 S. E., 213; *Wilkinson v. Wilkinson,* 159 N. C., 265, 74 S. E., 740; *Marcus v. Bernstein,* 117 N. C., 31, 23 S. E., 38; *Hatch v. Cohen,* 84 N. C., 602.

It was held in *Welch v. Cheek,* 115 N. C., 310, 20 S. E., 460, *S. c.,* 125 N. C., 353, 34 S. E., 531, that a dismissal of a warrant by a justice of the peace at the instance of the prosecutor, without the consent or procurement of the defendant therein, was a sufficient determination of the proceeding to support an action of malicious prosecution based thereon. See, also, *Murray v. Lackey,* 6 N. C., 368.

Want of probable cause, since it involves a negative, may be inferred from such facts and circumstances as will reasonably permit the inference, especially in case of nonsuit or directed verdict. *Tyler v. Mahoney,* 166 N. C., 509, 82 S. E., 870; *Moore v. Bank,* 140 N. C., 293, 52 S. E., 944. As against a demurrer to the evidence, it is sufficient to show that the proceeding, upon which the action for malicious prosecution is based, was instituted or pursued causelessly. *Humphries v. Edwards, supra.*

Probable cause for a criminal prosecution does not depend upon the guilt or innocence of the accused, nor upon the fact as to whether a crime has actually been committed. When one acts upon appearances in preferring a criminal charge, and the apparent facts are such as to lead a discreet and prudent person to believe that a crime has been committed by the party charged, although it turns out that he was mistaken, and the party accused was innocent, still he is justified. 18 R. C. L., 36. It is a case of apparent, rather than actual, guilt.

Justifiable cause, in a case of this kind, is a well founded belief on the part of the prosecutor in the existence of facts essential to the prosecution, supposing him to be a person of ordinary caution, prudence and judgment. *Cabiness v. Martin,* 14 N. C., 454. Probable cause for a criminal prosecution, in the sense in which the term is used in actions for malicious prosecution, was defined by *Mr. Justice Washington* in the case of *Munn v. Dupont,* 3 Wash., 37, as "a reasonable ground for suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the party is guilty of the offense with which he is charged." This was approved by the Supreme Court of the United States in the case of *Stacey v. Emery,* 97 U. S., 642, where the following definition of *Shaw, C. J.,* taken from *Ulmer v. Leland,* 1 Me., 135, was also quoted with approval: "Such a state of facts as would lead a man of ordinary caution to believe, or to entertain an honest and strong suspicion, that the person is guilty."

Speaking to the subject in *Smith v. Deaver,* 49 N. C., 513, *Battle, J.,* delivering the opinion of the Court, says: "As a guide to the Court, it is defined to be 'the existence of circumstances and facts sufficiently strong to excite, in a reasonable mind, suspicion that the person charged with having been guilty, was guilty. It is a case of apparent guilt as

contra-distinguished from real guilt. It is not essential, that there should be positive evidence at the time the action is commenced, but the guilt should be so apparent at the time, as would be sufficient ground to induce a rational and prudent man, who duly regards the rights of others, as well as his own, to institute a prosecution; not that he knows the facts necessary to insure a conviction, but that there are known to him sufficient grounds to suspect that the person he charges was guilty of the offense.' "

"Probable cause, in cases of this kind, has been properly defined as the existence of such facts and circumstances, known to him at the time, as would induce a reasonable man to commence a prosecution"— *Hoke, J.,* in *Morgan v. Stewart,* 144 N. C., 424, 57 S. E., 149.

Evidence that the chief aim of the prosecution was to accomplish some collateral purpose, or to forward some private interest, *e. g.,* to obtain possession of property, or to enforce collection of a debt, and the like, is admissible, both to show the absence of probable cause and to create an inference of malice, and such evidence is sufficient to establish a prima facie want of probable cause. *McDonald v. Schroeder,* 214 Pa., 411, 6 L. R. A. (N. S.), 701; *Wenger v. Phillips,* 195 Pa., 213; 78 A. S. R., 810; *Ross v. Hixon,* 46 Kan., 550, 26 A. S. R., 123, and note; 18 R. C. L., 53. *Contra: Barton v. Woodward,* 32 Idaho, 375, 5 A. L. R., 1090. *Quære: McRae v. O'Neal,* 13 N. C., 166.

The reason for holding that proof of a collateral purpose is sufficient to make out a prima facie want of probable cause, is based upon the hypothesis that a person, bent on accomplishing some ulterior motive, will act upon much less convincing evidence than one whose only desire is to promote the public good. See opinion of *Budge, J.,* in *Barton v. Woodward, supra.*

Speaking to the subject in *Brown v. Selfridge,* 224 U. S., 189, 56 L. Ed., 727, *Mr. Justice Day,* delivering the opinion of the Court, says: "While it is true that the want of probable cause is required to be shown by the plaintiff and the burden of proof is upon her in this respect, such proof must necessarily be of a negative character, and concerning facts which are principally within the knowledge of the defendant. The motives and circumstances which induced him to enter upon the prosecution are best known to himself. This being true, the plaintiff could hardly be expected to furnish full proof upon the matter. She is only required to adduce such testimony as, in the absence of proof by the defendant to the contrary, would afford grounds for presuming that the allegation in this respect is true. 1 Greenl. Ev., sec. 78. In other words, the plaintiff was only obliged to adduce such proof, by circumstances or otherwise, as are affirmatively within her control, and which she might fairly be expected to be able to produce. As *Mr. Justice Clifford* put

it, in *Wheeler v. Nesbitt,* 24 How., 544, 16 L. Ed., 765, the plaintiff must prove this part of the case 'affirmatively, by circumstances or otherwise, as he may be able.' "

The criminal prosecution, here in question, ended in failure. The chief purpose of Brady, who swore out the warrant, was to collect a debt. Prima facie, therefore, the prosecution was without probable cause. *Johnston v. Martin,* 7 N. C., 248; *Bostick v. Rutherford,* 11 N. C., 83. Malice, in the sense in which it is used in actions for malicious prosecutions *(Downing v. Stone,* 152 N. C., 525, 68 S. E., 9), is inferable from the absence of probable cause. *Turnage v. Austin,* 186 N. C., 266, 119 S. E., 359; *Kelly v. Traction Co.,* 132 N. C., 368, 43 S. E., 923; *Merrell v. Dudley,* 139 N. C., 57, 51 S. E., 777; *McGowan v. McGowan,* 122 N. C., 145, 29 S. E., 97; *Johnson v. Chambers,* 32 N. C., 287. This suffices to carry the case to the jury as against the defendant, F. G. Brady. *Motsinger v. Sink,* 168 N. C., 548, 84 S. E., 847.

It is also a permissible inference from the record that Brady, in swearing out the warrant, was acting at the instance of Swaim and under his direction and advice. In addition to what transpired on Saturday afternoon, Swaim took the check to the bank on Monday morning and requested that "an insufficient funds tag" be placed upon it. This undoubtedly was for the purpose of using the dishonored check as evidence at the hearing. Failing in this, Swaim later saw the plaintiff and said to him: "We made a mistake; we want you to come up with me and have this warrant withdrawn." Without the knowledge or consent of the plaintiff, the criminal prosecution was thereafter *"nol. pros'd* with leave." Swaim then presented the check for payment on the following day, 12 February, and it was duly paid by the bank upon presentation. *S. v. Crawford,* 198 N. C., 522, 152 S. E., 504.

Thus it would seem that Brady and Swaim were acting in concert, first, in an effort to obtain cash for the check; and, second, in undertaking to have it dishonored by the bank in order to use it as evidence before the magistrate. At least, such are the permissible inferences from the evidence appearing on the record. The court erred, therefore, in directing a verdict for the defendant, E. R. Swaim. *Bowen v. Pollard,* 173 N. C., 129, 91 S. E., 711.

Of course, a prima facie showing does not necessarily mean that the plaintiff is entitled to recover. It is sufficient to carry the case to the jury *(Brock v. Ins. Co.,* 156 N. C., 112, 72 S. E., 213), and it is for the jurors to say whether or not the crucial and necessary facts have been established. *Speas v. Bank,* 188 N. C., 524, 125 S. E., 398; *Cox v. R. R.,* 149 N. C., 117, 62 S. E., 884. We express no opinion as to the weight of the evidence, other than its prima facie character, which means only that it is legally sufficient to carry the case to the jury and

to warrant a recovery, nothing else appearing. *Hunt v. Eure,* 189 N. C., 482, 127 S. E., 593. It neither insures nor compels a recovery, however. *White v. Hines,* 182 N. C., 275, 109 S. E., 31.

Two questions arise in connection with the case as it relates to the Atlantic Refining Company, Inc.:

1. In prosecuting the plaintiff for uttering the check in question, were Brady and Swaim acting within the course of their employment or in the scope of their authority as employees or agents of the corporate defendant? *Martin v. Bus Line,* 197 N. C., 720, 150 S. E., 501.

2. Was the prosecution of the plaintiff previously authorized or subsequently ratified by the corporate defendant? *Jackson v. Tel. Co.,* 139 N. C., 347, 51 S. E., 1015.

It is elementary that the principal is liable for the acts of his agent, whether malicious or negligent, and the master for similar acts of his servant, which result in injury to third persons, when the agent or servant is acting within the line of his duty and exercising the functions of his employment. *Roberts v. R. R.,* 143 N. C., 176, 55 S. E., 509. This upon the doctrine of *respondeat superior.* One who commits a wrong is liable for it, and it is immaterial whether it be done by him in person or by another acting by his authority, express or implied. *Qui facit per alium facit per se. Sawyer v. Gilmers,* 189 N. C., 7, 126 S. E., 183; *Cotton v. Fisheries Products Co.,* 177 N. C., 56, 97 S. E., 712; *Gallop v. Clark,* 188 N. C., 186, 124 S. E., 145; *Cook v. R. R.,* 128 N. C., 333, 38 S. E., 925; *Pierce v. R. R.,* 124 N. C., 83, 32 S. E., 399.

"A servant is acting in the course of his employment, when he is engaged in that which he was employed to do, and is at the time about his master's business. He is not acting in the course of his employment, if he is engaged in some pursuit of his own. Not every deviation from the strict execution of his duty is such an interruption of the course of employment as to suspend the master's responsibility; but, if there is a total departure from the course of the master's business, the master is no longer answerable for the servant's conduct." Tiffany on Agency, p. 270.

If the wrongdoer, while acting within the range of his authority, does an act which injures another, the principal or master is liable therefor, without reference to whether the intent of the agent or servant was good or bad, innocent or malicious. *Sawyer v. R. R.,* 142 N. C., 1, 54 S. E., 793; *Cook v. R. R.,* 128 N. C., 333, 38 S. E., 925; *Pierce v. R. R., supra; Hussey v. R. R.,* 98 N. C., 34, 3 S. E., 923.

When the tort or wrongful act is done by express command of the principal or master or when it is afterwards adopted or ratified by him, there is little or no difficulty in applying the rule; but it is otherwise

when liability is made to depend upon implied authority. *Jackson v. Tel. Co., supra.*

Liability of the principal or the master depends not upon the motive of the agent or the servant, such as his intent to benefit the employer or to protect his property, but upon the question whether in the performance of the act which gave rise to the injury the agent or the servant was, at the time, engaged in the service of his employer. *Kelly v. Shoe Co.,* 190 N. C., 406, 130 S. E., 32; *Butler v. Mfg. Co.,* 182 N. C., 547, 109 S. E., 559; *Munick v. Durham,* 181 N. C., 188, 106 S. E., 665; *Clark v. Bland,* 181 N. C., 110, 106 S. E., 491; *Sawyer v. R. R., supra; Daniel v. R. R.,* 136 N. C., 517, 48 S. E., 816.

It is fully recognized that corporations may be held liable for negligent and malicious torts, and that responsibility will be imputed whenever such wrongs are committed by their employees, servants, or agents, in the course of their employment and within its scope. *Ange v. Woodmen,* 173 N. C., 33, 91 S. E., 586; *Huffman v. R. R.,* 163 N. C., 171, 79 S. E., 307; *Tripp v. Tobacco Co.,* 193 N. C., 614, 137 S. E., 871.

The following from Reinhard on Agency, sec. 335, clearly and cogently states the rule in such cases and the reasons for its adoption by the courts:

"It is a general principle of law, as well as of social compact, that every one must so conduct himself in the enjoyment of the privileges of life and property as not to injure the person or property of others. . . . If a legal wrong is committed by an accountable being, the party injured may obtain redress therefor in damages. If the wrong was committed by his authorized agent, or servant, the result is the same. By 'authorized agent' it is not meant to imply that the wrongful act itself must be authorized by the principal or master, or that any presumption of that nature must be indulged before the principal can be held responsible: it is sufficient if the agent was authorized to perform the act in the performance of which the wrong was committed; for the principal is responsible, not only for the act itself, but for the ways and means employed in the performance thereof. The principal may be perfectly innocent of any actual wrong or of any complicity therein, but this will not excuse him, for the party who was injured by the wrongful act is also innocent; and the doctrine is that where one of two or more innocent parties must suffer loss by the wrongful act of another, it is more reasonable and just that he should suffer it who has placed the real wrongdoer in a position which enabled him to commit the wrongful act, rather than the one who had nothing whatever to do with setting in motion the cause of such act. 'In such cases,' says Story, 'the rule applies *(respondeat superior),* and it is founded upon public policy and convenience, for in no other way could there be any safety to third per-

sons in their dealings, either directly with the principal, or indirectly with him, through the instrumentality of agents. In every such case the principal holds out his agent as competent and fit to be trusted, and thereby, in effect, he warrants his fidelity and good conduct in all matters within the scope of the agency.' "

Continuing, the same author, in section 336, says:

"Of course, if the master or principal authorized or ratified the tort, or participated in it himself, he will be liable for the damages occasioned by it. But if he did not authorize or ratify it he will still be liable if it was done in the course of the agent's or servant's employment; and this is so even if the master or principal had actually forbidden the act to be done. The test is, whether the tort was committed in the course of the employment of the servant or agent; if the wrongful act complained of was outside of the course of such employment, the master or principal is not liable, unless it was subsequently ratified."

To like effect is the following from *Marlowe v. Bland,* 154 N. C., 140, 69 S. E., 752: "An act is within the scope of the servant's employment, where necessary to accomplish the purpose of his employment, and intended for that purpose, although in excess of the powers actually conferred on the servant by the master. The purpose of the act rather than its method of performance is the test of the scope of employment. But the act cannot be said to be within the scope of the employment merely because the injuries complained of would not have been committed without the facilities afforded by the servant's relations to his master, nor because the servant supposed that he possessed authority to do the act in question." See, also, *Cotton v. Transportation Co.,* 197 N. C., 709, 150 S. E., 505, and cases there cited.

The result of the modern cases is, that a corporation is liable *civiliter* for torts committed by its servants or agents precisely as a natural person. Though it may have no mind with which to plot a wrong or hands capable of doing an injury, yet it may employ the minds and hands of others. If the tort of the servant is committed in the course of doing the master's work, and for the purpose of accomplishing it, it is the act of the master, and he is responsible "whether the wrong done be occasioned by negligence, or by a wanton and reckless purpose to accomplish the master's business in an unlawful manner." *Levi v. Brooks,* 121 Mass., 501; *Denver, etc., Ry. v. Harris,* 122 U. S., 597.

When the servant is engaged in the work of the master, doing that which he is employed or directed to do, and an actionable wrong is done to another, either negligently or maliciously, the master is liable, not only for what the servant does, but also for the ways and means employed by him in performing the act in question. *Ange v. Woodmen, supra;* Reinhard on Agency, *supra; Bucken v. R. R.,* 157 N. C., 443,

73 S. E., 137; *May v. Tel. Co.,* 157 N. C., 416, 72 S. E., 1059; *Berry v. R. R.,* 155 N. C., 287, 71 S. E., 322; *Roberts v. R. R., supra.*

In actions for malicious prosecution, where it is sought to hold the employer liable for an unwarranted proceeding by his employee, the question of liability, as in other cases, is made to depend, firstly, upon whether the proceeding was within the scope of the employee's duties; and, secondly, upon adoption or ratification. *Wilson v. Sewing Machine Co.,* 184 N. C., 40, 113 S. E., 508; *Cooper v. R. R.,* 165 N. C., 578, 81 S. E., 761, *S. c.,* 170 N. C., 490, 87 S. E., 322.

Undoubtedly, an officer employed to make arrests and to prosecute offenders in proper cases, would be acting within the scope of his authority in carrying out such duties, and the employer would be liable for an unwarranted prosecution instituted by him in the line of his duties. *Butler v. Mfg. Co., supra.*

Ordinarily, however, the criminal prosecution of an offender, even where the offense is against the property of the principal or master, is not within the scope of the agent's or servant's authority. *Daniel v. R. R., supra; Sawyer v. R. R., supra; Powell v. Fiber Co.,* 150 N. C., 12, 63 S. E., 159; *West v. Grocery Co.,* 138 N. C., 166, 50 S. E., 565; *Moore v. Cohen,* 128 N. C., 345, 38 S. E., 919; *Central Ry. Co. v. Brewer,* 78 Md., 394. "In doing such act the agent acts in response to his duty as a citizen to see that public justice is done by punishing the offender. He, by such act, does not in theory of law seek to punish the supposed thief because he has wronged the company, but because he has wronged the state." *Cameron v. Pacific Express Co.,* 48 Md. App., 99.

A distinction is to be made in this connection between those cases in which the action of the agent or the servant could have no effect other than the punishment of the offender, and those in which the prosecution was instituted or pursued with a view to the recovery of the employer's property or the protection of his business. As said by *Justice Blackburn* in *Allen v. London, etc., R. Co.,* L. R., 6 Q. B., 65: "There is a marked distinction between an act done for the purpose of protecting the property by preventing a felony, or of recovering it back, and an act for the purpose of punishing the offender for that which has already been done." Accordingly, in *Wheeler and Wilson Mfg. Co. v. Boyce,* 36 Kan., 350, where the unwarranted arrest and detention of the plaintiff was incidental to a replevin suit for the recovery of property belonging to the principal, the latter was held liable. To like effect is the decision in *Jackson v. Tel. Co., supra.* And in the following cases, where unwarranted arrests were made to enforce collections of debts which the agents believed to be due their principals, the latter were held responsible for the acts of the former. *Palmeri v. Manhattan Ry. Co.,* 133 N. Y.,

261, and *Dupree v. Childs*, 65 N. Y. Supp., 179. See, also, *Railroad Co. v. King*, 69 Miss., 852.

In the instant case, Swaim and Brady were undoubtedly acting within the course of their employment as agents or servants of the Atlantic Refining Company, Inc., in making sale and delivery of the gasoline and in undertaking to collect therefor. As to whether they exceeded their authority in resorting to or pursuing the criminal prosecution of the plaintiff, to enforce collection of the check, is the crucial point upon which the liability or nonliability of the corporate defendant in the first instance depends. 26 Cyc., 18; 2 C. J., 848. The check was made payable to "The Atlantic Refining Co." It was the property of the corporate defendant when the warrant was sworn out by Brady. It was the property of the corporate defendant when Swaim took it to the bank and asked that it be dishonored for nonpayment. It was the property of the corporate defendant when Swaim later presented it to the bank for payment.

If the individual defendants were acting within the scope of their authority as agents or servants of the corporate defendant in accepting the check, and Swaim was acting for the corporate defendant in finally presenting it for payment, which is not controverted, we think the case is one for the jury, under proper instructions from the court, to determine whether the Atlantic Refining Company, Inc., is liable to the plaintiff on either theory, *i. e.*, the theory of authorization or the theory of ratification.

On the theory of authorization, as to whether the individual defendants, in instituting or pursuing the criminal prosecution of the plaintiff for uttering the check in question, were about the business of the corporate defendant, acting in the line of their duties as such agents and servants, see: *Kelly v. Shoe Co., supra; Beam v. Fuller*, 171 N. C., 770,. 88 S. E., 760; *Fleming v. Knitting Mills*, 161 N. C., 436, 77 S. E., 309; *Berry v. R. R.*, 155 N. C., 287, 71 S. E., 322; *Stewart v. Lumber Co.*, 146 N. C., 47, 59 S. E., 545; *Merrell v. Dudley*, 139 N. C., 57, 51 S. E., · 777; *Kelly v. Traction Co.*, 132 N. C., 368, 43 S. E., 923; · *Lovick v. R. R.*, 129 N. C., 427, 40 S. E., 191; *Griffis v. Sellers*, 19 N. C., 492; *Davenport v. Lynch*, 51 N. C., 545.

On the theory of ratification, as to whether the corporate defendant, with full knowledge of the facts, ratified the acts of its agents or servants in instituting or pursuing the prosecution in question, see: *Waggoner v. Publishing Co.*, 190 N. C., 829, 130 S. E., 609; *Starkweather v. Gravely*, 187 N. C., 526, 122 S. E., 297; *Bank v. Justice*, 157 N. C., 373, 72 S. E., 1016; *Daniel v. R. R.*, 136 N. C., 517, 48 S. E., 816; *Minter v. Express Co.*, 153 N. C., 507, 69 S. E., 497; *Dempsey v. Chambers*, 154 Mass., 330; 18 R. C. L., 811; 21 R. C. L., 919; 2 C. J., 470.

CAMPBELL *v.* R. R.

The decisions in *Turnage v. Austin, supra; Powell v. Fiber Co., supra; West v. Grocery Co., supra; Moore v. Cohen, supra,* cited and relied on by the defendants, and *Lamm v. Charles Stores Co., post,* 134, are not at variance with our present position. They are distinguishable by reason of different fact situations.

The entire merits of the case are not before us. For aught we know, the jury may find, upon consideration of ·all the evidence, that probable cause ·existed for the prosecution; that it was instituted and pursued without malice, and that the corporate defendant in no event is liable therefor. But upon the record, as presently presented, there was error in directing a verdict for the defendants.

New trial.