This is an action brought to recover damages for false imprisonment and malicious prosecution. The plaintiff was a passenger on one of the street cars owned and operated by the defendant and had paid his fare to the conductor, Eubanks. There seems to have been two conductors upon the car, Eubanks and Brock, and also the general manager, Butler. The conductor Eubanks again demanded the fare from the plaintiff, who refused to pay on the ground that he had already paid. Eubanks then went to the front of the platform and asked some one whether he should stop. He was answered "No." When the car reached Five Points the plaintiff was arrested by a policeman and taken to the police headquarters, where he was released on bail after a short detention. Before being taken from the car the plaintiff demanded the cause of his arrest, and upon being informed that it was because he had not paid his fare, stated that he had paid it, but offered to pay it again to prevent any trouble. The conductor Brock said, "Too late," and the plaintiff was taken off the car. The witness McGuirk testifies that "Eubanks told the policeman, `There they are,' pointing to Kelly (the plaintiff), Ray and Griffith, saying, `Take them,' and the (370) policeman arrested them." *Page 263 
The defendant does not appear to have introduced any evidence, and offered no objection to the plaintiff's testimony. It is admitted that the plaintiff was tried before the mayor of the city of Durham for violation of section 3, chapter 16, of the ordinances of the said city, which reads as follows: "Any person who shall get upon a street car for the purpose of defrauding the owners thereof of the fare shall upon conviction be fined $10."
It is also admitted that the plaintiff was acquitted and discharged.
The issues and answers thereto are as follows:
"1. Was the plaintiff illegally arrested, as alleged in complaint?" Answer: "Yes."
"2. If so, did the defendant procure the same?" Answer: "Yes."
"3. Was the plaintiff prosecuted by the defendant for the violation of the town ordinance before the mayor of the city of Durham, as alleged in the complaint?" Answer: "Yes."
"4. If so, was the prosecution on the part of the defendant without probable cause?" Answer: "Yes."
"5. If so, was the prosecution with malice?" Answer: "Yes."
"6. What damage, if any, has the plaintiff sustained?" Answer: "$500."
From a judgment for the plaintiff, the defendant appealed.
Among the numerous exceptions by the defendant, there are none to the admission of testimony, and but two to its exclusion. The defendant proposed to ask the plaintiff: "Did not Griffith admit before the mayor that he did not pay his street car fare? That he was so tight that he did not know much (371) about it? Also did not Griffith say that he and others were in the same fix?" Again, the defendant proposed to show by the same witness on cross-examination that "at the trial before the mayor, Ray pleaded guilty for being drunk and disorderly at Five Points on this occasion, and Griffith stated before the mayor that he had not paid his fare." Upon objection the proposed evidence was excluded. We can see no ground upon which it could have been admitted. What Ray and Griffith may have said about themselves did not concern the plaintiff, who was not charged with conspiracy, and who was neither arrested nor tried on any charge of drunkenness or disorder. A. E. Enc. (2 Ed.), 753.
There are twenty-two exceptions, but as exception 17 is directed to each and every refusal to give each and every of the twelve special *Page 264 
instructions, it practically amounts to eleven additional exceptions. It is needless as well as impracticable for us to discuss all the exceptions, especially those relating to the refusal of the court to give special instructions. Five were directed to the refusal of the court to direct a verdict in favor of the defendant upon five different issues. As there was evidence tending to sustain the contentions of the plaintiff, the issues were properly submitted to the jury. As to the remaining exceptions, we will confine ourselves to those apparently relied on by the defendant. It contends that, "There was no evidence as to the following material facts:
"1. Who caused the arrest of the plaintiff. 2. The warrant was not offered. 3. Who swore out the warrant. 4. That the defendant caused, procured or promoted the prosecution."
The witness McGuirk testifies that the conductor Eubanks pointed out Ray, Griffith, and the plaintiff, and directed the policeman to take them, whereupon they were immediately arrested. It therefore (372) appears that their arrest was caused by the defendant, through its servant acting within the general scope of his authority. Moreover, the plaintiff testified that Eubanks went to the front of the car, asked some one if he must stop. This person said "No." . . . "Butler was on the front of the car." Such is the plaintiff's evidence, which upon all motions by the defendant for nonsuit or direction of the verdict must be construed most strongly in favor of the plaintiff. From this the jury might have inferred that the general manager of the company was also a party to the arrest.
Under the circumstances of this case the arrest without a warrant was illegal, and proof that the defendant acted without malice would be no defense. Neal v. Joyner, 89 N.C. 287; S. v. McAfee, 107 N.C. 812, 10 L.R.A., 607; Newell on Malicious Prosecution, 100.
It is true, the warrant was not offered in evidence, but we do not see how it was material, as its regularity was not questioned.
It is not necessary to show who actually swore out the warrant, provided it was at the instigation or procurement of the defendant. Kline v. Shuler,30 N.C. 484, 49 Am. Dec., 402; 19 A. and E. Enc. Law (2 Ed.), 692.
There was evidence tending to prove that the defendant instigated the prosecution. It is true, it is merely circumstantial; but if circumstantial evidence is competent on an issue of life or death, we see no reason why it is not equally competent in civil cases. His Honor thus correctly stated the contentions of the plaintiff: "The plaintiff relies upon the circumstances that the charge against the plaintiff was for violating an ordinance passed for the protection of the traction company, and that no other person had any interest to prosecute. Second. *Page 265 
That the plaintiff was arrested under the direction of the conductor of the defendant company upon a charge of not having paid his fare, and that the warrant was for the same offense. Third. (373) That the plaintiff was arrested and immediately carried to the guardhouse, and the prosecution followed immediately.
"The plaintiff contends that the circumstances are sufficient to satisfy you that the plaintiff was prosecuted by the agent of the traction company and that such agent was acting within the scope of his authority."
The defendant excepted to the statement of each of these contentions, but the exceptions cannot be sustained. The court was equally fair and explicit in stating the contentions of the defendant. The ordinance appears upon its face to have been passed for the protection of the defendant, and this would be none the less so had it appeared that there were other street railways in the city of Durham.
The defendant contends that there was no evidence of malice. That the conductor Eubanks, after an altercation with the plaintiff, in which he had repeatedly demanded the fare, refused to accept the fare when tendered, and ordered the arrest of the plaintiff, tends to show malice. Without this, the jury were at liberty to infer malice from the want of probable cause, and this they seem to have done. This Court said inJohnson v. Chambers, 32 N.C. 287: "The dismissal of the State's warrant raised a presumption of the want of probable cause, but it did not also raise a presumption of malice; for the question of malice was not inquired of by the justice of the peace. . . . Malice may in some cases be inferred from want of probable cause, but the law makes no such presumption. It is a mere inference of fact, which the jury may or may not make; and it should have been left to them, in addition to the question of damages." This Court has also said in Brooks v. Jones,33 N.C. 260: "When there is a total want of probable cause the jury will infer malice almost of necessity, as a prosecution wholly groundless cannot be accounted for in any other way." Both these cases (374) have been quoted with approval in McGowan v. McGowan,122 N.C. 145. In the case at bar, his Honor properly charged the jury that, "Malice may be inferred by the jury on account of the want of probable cause. They are not, however, obliged to infer malice from the want of probable cause."
On the question of damages the court charged: "Now, as to the sixth issue, the issue of damages, first for the illegal arrest, you can give plaintiff such actual damages as will compensate him for injury to his feelings, mental suffering, loss of time, and any other actual damage which the plaintiff may have sustained." The defendant excepted to each and every part of this charge. We think it is substantially correct; *Page 266 
but even if the latter part were too indefinite, we do not think that the defendant is in a condition to complain of it, as the court gave the following instructions at the request of the defendant: "If the jury answers the first, second, third, fourth, and the fifth issues Yes, then in ascertaining the damages sustained by the plaintiff they will allow compensation for loss of time, hire, injured credit, decrease of earnings, mental suffering, and all approximate consequences of the wrong." This instruction is much broader than the charge complained of, and contains every element of the exception. This Court, in Buie v. Buie, 24 N.C. 87, speaking by Gaston, J., says: "A party cannot except for errors to an instruction which he hath himself prayed." The same principle is reiterated in McLennan v. Chisholm, 66 N.C. 100, and Moore v. Parker, 91 N.C. 275.
His Honor properly charged that exemplary damages could be given for malicious prosecution, as in all cases where malice is an essential element in the cause of action. 19 A. E. Enc. (2 Ed.), 704; Ellis v.Hampton, 123 N.C. 194; Sowers v. Sowers, 87 N.C. 303, and Chappell v. Ellis, 123 N.C. 259, 68 Am. St., 822, and cases therein cited. (375) It is equally well settled that in cases of false arrest or imprisonment the plaintiff is entitled to all actual damages, but cannot recover punitive damages unless the arrest or detention is accompanied with gross negligence, malice, insult, oppression, or other circumstances of legal aggravation. Lewis v. Clegg, 120 N.C. 292;Lovick v. R. R., 129 N.C. 427. The defendant excepted to the charge defining what was meant by a servant acting within the scope of his employment; but these exceptions were not pressed in the brief of the learned counsel. In any view of the evidence (if believed) the servants of the defendant were acting within the general scope of their authority in procuring the arrest and prosecution of the plaintiff.
The defendant in its brief thus alludes to the character of the plaintiff: "The police station and guardhouse of the city were familiar to plaintiff, as he had twice before this occasion been locked up on the admittedly just charge of drunkenness, and once subsequent to this occasion he had been locked up therein for using a street of the city as a place to sleep off a drunken debauch."
This is a sad record, especially in one so young; but he does not appear ever to have been charged with crime, and he may yet reform. In any event, he is entitled to the protection of the law, and belongs to a class who need it most. In some cases extremes meet. There are some degraded wretches whose characters are too low to be injured by the tongue of slander, while there are others whose established reputations are beyond its reach. General Houston's stern answer in refusing to accept a challenge from one who threatened to post him as a coward was no *Page 267 
empty boast when he said in plain Texan phrase: "When you post me as a coward, you will post yourself as a liar." It is those who are hanging on the ragged edge of respectability whose reputations are most deeply affected by the false accusation of crime; and when they (376) prove their innocence they are entitled to such damages as the law will allow under existing circumstances.
As we see no error in the conduct of the trial, the judgment of the court below is
Affirmed.
Cited: Merrell v. Dudley, 139 N.C. 60; Stanford v. Grocery Co.,143 N.C. 427; Stewart v. Lumber Co., 146 N.C. 110; Powell v.Fibre Co., 150 N.C. 17; Warren v. Lumber Co., 150 N.C. 38;Wilkinson v. Wilkinson, 159 N.C. 270; Humphries v. Edwards,164 N.C. 156; Motsinger v. Sink, 168 N.C. 551;Beam v. Fuller, 171 N.C. 771; Gray v. Cartwright,174 N.C. 51; Exchange Co. v. Bonner, 180 N.C. 21.