THOMAS H. BOWEN v. W. A. POLLARD & CO. ET AL.

(Filed 14 March, 1917.)

**1. Malicious Prosecution—Probable Cause—Burden of Proof—Trials—Evidence—Nonsuit.**

In an action for damages for malicious prosecution the burden is on the plaintiff to show the institution and termination of the criminal action, that it was without probable cause and with malice, and that the defendant participated therein; and if there is evidence in plaintiff's behalf which, taken in the light most favorable to him, tends to establish the requisite facts, a judgment of nonsuit should not be granted.

**2. Malicious Prosecution—Probable Cause—Evidence—Prima Facie Case.**

Probable cause, in an action for malicious prosecution, is *prima facie* established by the fact that the committing magistrate in the criminal action required a bond for the appearance of the defendant therein at the Superior Court, and there the grand jury found a true bill against him, which the defendant may rebut by his own evidence in his action for malicious prosecution.

**3. Malicious Prosecution — Probable Cause — Criminal Action — Evidence — Prosecutors.**

Where a plaintiff in an action for damages for malicious prosecution has been arrested for using a part of a crop under attachment, and there is evidence tending to show that he owed defendants nothing, or had replevied the crop, or that the officer had not taken possession, but left it exposed for several weeks, when the plaintiff's wife, without his knowledge, had it housed and fed some to his team; that the officer who swore out the criminal warrant knew of these facts, offered to take $5 for the damages, which was agreed to by the lienee, etc., who, after conviction by the magistrate, refused to go on plaintiff's bond, with statement he would not do this and prosecute him, too: *Held,* sufficient upon the question of want of probable cause in the criminal case, and that both the officer and lienee, defendants in the civil action, participated therein.

9—173

**4. Malice—Probable Cause—Evidence.**

> Malice in prosecuting a criminal action may be inferred by the jury from a want of probable cause, in an action for damages for malicious prosecution.

**5. Malicious Prosecution—Partnership—Knowledge.**

> A partner who is not aware of a criminal prosecution by the other, and was absent and did not know thereof until after its termination, is not liable, by the mere fact of partnership, in an action for damages for malicious prosecution.

CIVIL ACTION, tried before *Stacy, J.,* at January Term, 1917, of PITT.

This is an action to recover damages for malicious prosecution, the evidence tending to prove the following facts: The plaintiff was living on his wife's land in Pitt County, and went to Pollard & Co. to obtain advancements for the year 1910 to the amount of $400. In accordance with the agreement made, Bowen executed a crop lien to Pollard & Co. on 25 January, 1910. About five weeks thereafter the defendant Pollard approached the plaintiff and requested, as the title to the land had been found to be in plaintiff's wife, that plaintiff and his wife sign the crop lien. This the plaintiff agreed to do, and in accordance with the desire of Pollard & Co., plaintiff and wife executed a new crop lien to the said defendants. At the time this was done, Mrs. Bowen, wife of the plaintiff, refused at first to sign unless one-third of the crop was excepted, as she was in debt for the land. Finally it was agreed that 5 acres should be excepted, and the exception of "5 acres in tobacco" was written in the mortgage.

Mrs. Bowen planted peas in the tobacco when it was laid by.

There is no definite evidence in the record as to how much the account of the Bowens amounted to for the year, but it was about $600. The plaintiff introduced in evidence receipts to the amount of $590, which were admitted to be correct.

When the harvesting season came on Pollard & Co. received all of the plaintiff's crop and certain personal property.

This cause of action grew out of the efforts of Pollard & Co. to obtain the hay raised on Mrs. Bowen's 5 acres of tobacco excepted in the crop lien. They began an action against the plaintiff and his wife for the hay before a magistrate of Farmville Township, in which action papers in claim and delivery were issued.

When the claim and delivery papers were served upon the Bowens, the hay was not actually seized, but remained in the yard of plaintiff Bowen, with a statement of the officer not to move it before trial. An examination of the officer's return upon the fiat, in the record, shows

that the officer states "The defendant having executed a good and sufficient undertaking as required by law, the said property was delivered back to the defendant.'"

After the trial the hay in question remained in the stack in the yard for several weeks, exposed to the weather and the depredations of stock, until finally Mrs. Bowen had her boys remove it and placed it under shelter. She then used up about 300 pounds of the hay in feeding the team; but plaintiff testifies he had nothing whatever to do with this or the removal of the hay.

Some time after this the defendant Flanagan went to the home of the plaintiff and asked for the hay. He was the constable of Farmville Township and the one who served the claim and delivery papers. According to his statement, there was as much as 1,000 pounds of the hay used, and he demanded pay for it, and says that Bowen promised to pay $5 for what was used, and that Bowen did not do what was promised; that he told Pollard about this, and Pollard said that $5 would be all right. Flanagan further states that he informed Pollard that the $5 was not paid.

Immediately afterwards Flanagan swore out the criminal warrant. Before the arrest Flanagan resigned and Bowling took his place, and made the arrest.

The new constable arrested Bowen and carried him under custody to Farmville. Upon arriving there, Bowen was taken to the store of Pollard & Co., and Pollard offered, upon the payment of $10 for the hay, to let Bowen go. Bowen did not have the money, and he was put in the town guardhouse for the night. The next morning he was taken out and tried before R. E. Belcher, a brother-in-law of the defendant Flanagan. At this trial Bowen was bound over to the Superior Court under $200 bond. Bowen endeavored to get the constable to carry him by the home of one Bill Elks, who lives on one of the roads running from Farmville to Greenville, where Bowen could have given bond, but the constable would not do this. The plaintiff was put back in the guardhouse and kept all that day and night, and was carried to Greenville next day.

After the trial of the case before the magistrate, Bowen was again carried to Pollard, and he asked Pollard to stand his bond. This Pollard refused to do, with a statement that he would not stand his bond after prosecuting him for the hay.

When the case was brought to trial in the Superior Court, the grand jury found a true bill, but upon the trial the presiding judge directed a verdict of not guilty.

It is in evidence that the defendants Pollard & Co. never advertised and sold the produce and chattels taken from the plaintiff, as required by law, but credited them at the price fixed by themselves.

There was other evidence, which is referred to in the opinion.

At the conclusion of the evidence his Honor entered judgment of nonsuit, and the plaintiff excepted and appealed.

*S. J. Everett and W. F. Evans for plaintiff.*
*F. G. James & Son and Skinner & Cooper for defendants.*

ALLEN, J. The action is to recover damages for a malicious prosecution, and the burden is on the plaintiff to prove:

(1) The institution and termination of a criminal charge against him.

(2) That the prosecution was without probable cause.

(3) That it was with malice.

(4) That the defendants participated in the prosecution.

If, however, he has furnished evidence of these facts, giving to the evidence the most favorable construction for the plaintiff, as we are required to do on appeals from judgments of nonsuit, there is error.

It is not denied that a criminal prosecution was instituted against the plaintiff, and that it terminated by a verdict of not guilty before this action was commenced; but the defendants contend that probable cause is shown by the evidence of the plaintiff, and that there is no evidence of malice, or that the defendants took part in the prosecution.

"What is probable cause is a question of law, to be decided by the court upon the facts as they may be found by the jury." *Beale v. Robinson,* 29 N. C., 280; *Vickers v. Logan,* 44 N. C., 393. As a guide to the court, it is defined to be "the existence of circumstances and facts sufficiently strong to excite in a reasonable mind suspicion that the person charged with having been guilty was guilty. It is a case of apparent guilt as contradistinguished from real guilt. It is not essential that there should be positive evidence at the time the action is commenced, but the guilt to be so apparent at the time as would be sufficient ground to induce a rational and prudent man, who duly regards the rights of others as well as his own, to institute a prosecution; not that he knows the facts necessary to insure a conviction, but that there are known to him sufficient grounds to suspect that the person he charges was guilty of the offense." *Smith v. Deaver,* 49 N. C., 515, approved in *Wilkinson v. Wilkinson,* 159 N. C., 265.

The fact that the committing magistrate required the plaintiff to enter into bond for his appearance at court, and that a grand jury returned a true bill against him, establish probable cause prima facie,

but not conclusively, and it was still open to the plaintiff to prove there was no probable cause. *Stanford v. Grocery Co.,* 143 N. C., 426.

Let us apply these principles to the evidence.

The charge in the warrant is that the plaintiff did "move and make way with hay after being attached," and it appears that the hay was not attached, but that it was seized in proceedings in claim and delivery.

The defendant Flanagan who served the papers in the claim and delivery proceedings and who made the affidavit for the warrant, does not testify that after the seizure of the hay he left it in charge of the plaintiff as his agent, if this could be done legally, nor does it appear that he made any effort to remove it.

He left it where it was on the land of the plaintiff's wife, and made return: "The defendant (the plaintiff in this action) having executed a good and sufficient undertaking, as required by law, the said property was delivered back to the defendant."

The plaintiff testified that the hay remained in the field more than a month after the papers in claim and delivery were served, when it was removed to a shelter by his wife and children in his absence, to protect it from stock, and that although about 300 pounds of the hay was used in feeding horses, on which the defendants Pollard & Joyner held a mortgage, and which were afterwards delivered to them, he had nothing to do with it, and so told Flanagan before the warrant was issued.

He also offered evidence tending to prove that the supplies furnished by Pollard & Co. amounted to about $600, and he produced receipts showing payments of $590, and, in addition, that he had delivered 15 bushels of cotton seed, and that the stock turned over to Pollard & Co. was not advertised and sold, and was credited at less than its value.

The wife of the plaintiff also testified "that instead of them owing Pollard (meaning Pollard & Co.), that Pollard was owing them."

If this evidence is true, and the jury alone had the right to pass on its credibility, the warrant was issued on the affidavit of the defendant Flanagan for unlawfully removing the hay, when there was nothing due Pollard & Co., which Pollard & Co. knew or ought to have known, and when the hay had been left with the plaintiff after he had given his bond for the return of the property, and when the plaintiff had told Flanagan he had nothing to do with the use or removal of the hay; and this is evidence of a want of probable cause, and malice may be inferred from a want of probable cause. *Humphries v. Edwards,* 164 N. C., 156.

The distinction between malice which is necessary to sustain the action and proof of malice which will justify awarding punitive damages is clearly stated and discussed by *Justice Hoke* in *Stanford v. Grocery Co.,* 143 N. C., 422.

There is, however, some evidence of actual malice in the evidence of the plaintiff, in addition to the malice which may be inferred from the want of probable cause, and which alone is sufficient to sustain this element in the cause of action, which we will not discuss, as the action is to be tried again.

We have, then, evidence of malice and of a want of probable cause, and the remaining question is whether there is any evidence that the defendants or either of them participated in the prosecution.

Flanagan made the affidavit upon which the warrant issued, and the plaintiff testified that after his arrest he was carried to the store of Pollard & Co. and that the defendant Pollard told him before the trial that if he would pay him $10 he would let him go back, and again after the trial that he would release him if he would pay him $10 for the hay; and when asked to stand his bond for his appearance at court, Pollard said: "You know I would not stand your bond after prosecuting you for the hay"; and this evidence that these two defendants took part in the prosecution.

We find no evidence against the defendant Joyner.

He was absent from home when the prosecution was begun, and knew nothing about it, so far as the evidence discloses, until after its termination, and the mere fact that he was a partner of Pollard, without evidence, direct or circumstantial, of at least his knowledge, approval, or consent, would not be sufficient to connect him with the prosecution. *Gilbert v. Emmons,* 89 A. D., 412; *Rosankrans v. Barker,* 56 N. R., 169; *Noblett v. Bartsch,* 96 A. S. R., 886.

The judgment of nonsuit must, therefore, be set aside as to the defendants Flanagan and Pollard and sustained as to Joyner.

Reversed as to Pollard and Flanagan.

Affirmed as to Joyner.