Richard T. **WEHRLE**, Plaintiff,

v.

Mrs. Oren **BROOKS**, Defendant.

Civ. No. 2111.

United States District Court
W. D. North Carolina,
Charlotte Division.

Aug. 1, 1966.

Ernest S. DeLaney, Jr., and Samuel M. Millette, Charlotte, N. C., for plaintiff.

Fred B. Helms, Charlotte, N. C., for defendant.

## MEMORANDUM OF DECISION

CRAVEN, Circuit Judge:[*]

During the second week of January 1966, Richard T. Wehrle was put on trial for his life in the Superior Court of Mecklenburg County under two indictments, consolidated for purposes of trial, charging him with the capital felonies of burglary and rape. Verdicts of acquittal or not guilty were returned by the jury as to each indictment. On March 8, 1966, Wehrle filed suit in this court against (Mrs.) Oren Brooks, who testified for the prosecution in the criminal cases. In his complaint he states a double cause of action for malicious prosecution, i. e., one count relating to the abortive prose-cution for burglary and another count relating to the abortive prosecution for rape. As to each count, his prayer for relief is in the amount of $1,000,000.00.

Counsel for Brooks interposed to the complaint a motion to dismiss on the ground of lack of jurisdiction in the federal court and, alternatively, a motion for summary judgment on the ground that the defendant is entitled to judgment as a matter of law, and that the plaintiff, as a matter of law, is not entitled to recover anything of the defendant.

I have twice met with counsel in chambers and briefly considered these questions, and, subsequently, on July 22, 1966, I heard counsel in open court argue both motions for two hours and a half. Since then I have carefully read, at least once, the briefs, the complaint, the defendant's motions, all of the affidavits filed in support and in opposition to the motions, all of the exhibits marked by counsel and tendered to the court pursuant to order entered July 12, 1966, including the 390-page transcript of the criminal trial.

## JURISDICTION

Wehrle's complaint presents no federal question. There is no jurisdiction unless there is diversity of citizenship and a sufficient amount in controversy. Title 28 U.S.C.A. Section 1332.

"Upon motion to dismiss for lack of diversity of citizenship or required amount in controversy, the plaintiff has the burden of proof to establish the jurisdictional facts." 1A Barron & Holtzoff 340–341, Section 352.

Amount in controversy requires no discussion. Defendant's motions admit the sufficiency of it. If it be assumed that Wehrle was maliciously prosecuted resulting in his being put on trial for his life on indictments charging two capital felonies, a jury might properly award substantially more in damages than the requisite minimum of $10,000.00 on each count. The amount in controversy on

---

[*] Sworn in as United States Circuit Judge, Fourth Circuit, on July 5, 1966, and designated to sit as United States District Court Judge in the Western District of North Carolina to complete matters pending at time of appointment.

each cause of action is in excess of the minimum required by the statute.

With respect to diversity of citizenship, it is undisputed that Brooks is a citizen and resident of North Carolina.

As to Wehrle's citizenship, I find the jurisdictional facts to be as follows:

(1) Richard T. Wehrle was born in the State of Iowa and acquired and retained his father's domicile in that state until he reached approximately age eighteen.

(2) When Wehrle was about eighteen (he is now about twenty-three), his father's business caused him to move to Charlotte, North Carolina, acquiring a domicile in this state, and North Carolina then became the domicile of Richard T. Wehrle.

(3) In January 1966 Wehrle testified in the Superior Court of North Carolina clearly indicating that he was domiciled at that time in the State of North Carolina, and he was at that time so domiciled.

(4) After Wehrle was acquitted of the capital felonies of burglary and rape, he remained extremely conscious of the unfavorable publicity resulting from extensive newspaper, television, and radio coverage of the trial. He honestly formed the opinion in his own mind, after seeking the advice of others, that he could not successfully pursue his ambition to become a practicing lawyer within the State of North Carolina. He justifiably felt that the memory of the capital indictments brought against him would linger in the memory of many of the people of North Carolina for some considerably long period of time, and that the resultant notoriety attaching to his name would handicap his achieving success in the profession of law. Dominated by this reason, but also for reasons of native attachment, Wehrle decided on or before March 5, 1966, to change his domicile and to make the State of Iowa his permanent future home. It is difficult to think of anything a person desiring to change his domicile could do to effect it that has not been done by Wehrle. On March 5, 1966, he flew to his uncle's home in Mason City, Iowa, discussed employment in his uncle's law office upon completion of his legal education, and agreed to accept such employment, moved some of his personal effects to his uncle's home in Iowa, and accepted an invitation to make that home his own. Subsequently, he entered the University of Iowa Law School for the summer term, advised his Charlotte draft board of his change of domicile from North Carolina to Iowa, and his permanent address as Mason City, Iowa, and made inquiries of the necessary steps to be taken in order to be eligible to take the Iowa bar examination.

There is no question whatsoever in my mind that on or before March 5, 1966, Richard T. Wehrle honestly and genuinely intended to change his domicile and to acquire a new domicile in the State of Iowa and did all of the things detailed hereinabove for the purpose of changing his said domicile.

Having such an intention and having actually gone to the State of Iowa on March 5, 1966, for the purpose of implementing such intention, I conclude as a matter of law that Wehrle's domicile changed on that date, and that on and after March 5, 1966, his domicile was within the State of Iowa, and specifically at Mason City, Iowa.

Although Wehrle's motive in changing domicile was dominantly that set out hereinabove, I think he was partly

motivated by a desire to file this suit for malicious prosecution in a federal court rather than a state court. Such motivation is immaterial and does not invalidate the intention to change domicile. Janzen v. Goos, 302 F.2d 421 (8th Cir. 1962); Wright, Federal Courts Section 26, p. 75 (1963). When this suit was filed on March 8, 1966, Wehrle was a citizen and resident of the State of Iowa. Jurisdiction exists in this district court. Motion of defendant to dismiss will be denied.

### SUMMARY JUDGMENT

 ·A more difficult problem is presented by the motion for summary judgment. In determining such a motion, the district judge is not empowered to find facts in the sense of resolving questions of credibility on conflicting testimony or affidavits. But, it is misleading to say, without explanation, that findings of fact should not be made in disposing of motions for summary judgment. See 3 Barron & Holtzoff 201, Section 1242. All that is meant by such a statement is that contested issues of fact cannot be resolved on motion for summary judgment and must be determined at trial. The rule is often stated that: "In granting a motion for summary judgment * * * the court merely rules that there are no material issues of fact and decides questions of law." *Ibid.* But it is impossible to decide that there are no material issues of fact without first deciding what the admitted or uncontroverted facts are. In that sense, the district court does, and indeed must, decide what the facts are. Unless it does so, there is insufficient basis for appellate review of the district court decision. *Ibid.*

Prior to the amendment to Federal Rule of Civil Procedure 56(e) effective July 1, 1963, it had been held in a few isolated district court cases and in the Third Circuit that issues of fact arise upon general denials in the pleadings and/or affidavits. The amendment was adopted to broaden the scope of summary judgment—especially in the Third Circuit.

The last two sentences of Rule 56(e) were added by the 1963 amendment and read as follows:

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

These sentences are explained in the Advisory Committee's Notes in words as follows:

"The last two sentences are added to overcome a line of cases, chiefly in the Third Circuit, which has impaired the utility of the summary judgment device. A typical case is as follows: A party supports his motion for summary judgment by affidavits or other evidentiary matter sufficient to show that there is no genuine issue as to a material fact. The adverse party, in opposing the motion, does not produce any evidentiary matter, or produces some but not enough to establish that there is a genuine issue for trial. Instead, the adverse party rests on averments of his pleadings which on their face present an issue. In this situation Third Circuit cases have taken the view that summary judgment must be denied, at least if the averments are 'well-pleaded,' and not supposititious, conclusory, or ultimate. (Citations omitted.)

"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. The Third Circuit doctrine, which permits the pleadings themselves to stand in the way of granting an otherwise justified summary judgment, is incompatible with the basic purpose of the rule. See 6 Moore's Federal Practice 2069 (2d ed. 1953); 3 Barron & Holtzoff, supra, § 1235.1.

"It is hoped that the amendment will contribute to the more effective utilization of the salutary device of summary judgment."

The following facts are established beyond controversy, i. e., either admitted to be so by the parties or established by disinterested witnesses whom the parties are unable to controvert after exhaustive use of discovery procedures:

(1) At about 2:30 A.M. on Tuesday morning, July 27, 1965, Oren Brooks reported to the Charlotte police station a break-in at her residence. At about 3:00 A.M., two police officers of the City of Charlotte responded to the call and came to residence of Brooks, entered, and found her in an incoherent and frightened condition. She had a small abrasion on her chin and red pressure marks on one of her arms between elbow and shoulder. The latch on her sliding screen door entering her bedroom had been broken off (the broken piece was on the floor), and damage had been done by some instrument to the rubber molding on either the screen door or the glass doors so as to cause small bits or pieces of it to become separated and fall to the floor. Within an hour, Brooks left her home to go with her son, a medical doctor, to his home for the rest of the night. The officers found footprints, or, to be more exact, disturbance of the dew which had fallen on the grass leading from Brooks' sliding doors to Sharon Road.

(2) Either before or after (perhaps both) July 27, 1966, other burglaries occurred in the residential area wherein Brooks' home is located. A great amount of newspaper coverage attended these burglaries, and substantial pressure was put on the Charlotte Police Department to solve the series of break-ins in the Foxcroft area. From July 27 until early November, Brooks was interviewed several times by police officers. The description given by her of the intruder immediately after the alleged burglary was inconsistent with that given a day or so later. The first description was that of a blonde male person approximately five feet and six inches tall and weighing 135 pounds. Her second description—given about 48 hours later—was that of a white male person about the size of the interviewing officer, who himself was five feet eleven inches tall, age approximately 30, and weight approximately 170 pounds. The latter description was not inconsistent with the size, weight, and height of Wehrle. The first one *was* inconsistent to the point of excluding the possibility that he could have been the offender.

From July 27, 1966, until sometime in November 1966, Brooks examined numerous photographs submitted to her by the Police Department in unsuccessful attempts to identify the alleged burglar. She also attended at least one "line-up" of persons at the police station, but was unable to identify any of the persons inspected or of any of the photographs shown her.

(3) On or about November 19, 1965, Oren Brooks reported to the police that she positively identified one of five photographs as being the offender. The identified photograph was one of Richard T. Wehrle. Another "line-up" was immediately arranged at the Police Department in which Wehrle appeared, and Brooks positively identified him as the offender. Within perhaps fifteen minutes of her

positive identification, but after she had left the police station, detective Moseley made out a warrant charging Wehrle with the capital felony of burglary. Oren Brooks did not swear out the warrant. Despite valiant efforts to do so and exhaustive use of discovery, counsel for plaintiff have not been able to produce one scintilla of evidence to indicate that Brooks:

(a) Asked, requested, or suggested that such a warrant be issued.

(b) Was present at the time the warrant was issued.

(c) Knew the name of the plaintiff at the time of issuance of warrant.

(d) Knew that a warrant was going to be issued.

(e) Knew the name of the plaintiff or the name of his family until after the warrant issued and she read of it in the Charlotte Observer of November 20, 1965.

(4) With respect to the rape indictment, Brooks told two officers of the Charlotte Police Department on the day after the alleged offense that she had been sexually molested and assaulted. She asked those officers to tell no one about it except their Captain McCall and to request that he keep any mention of it out of the reports. Except for disclosure to the two police officers, who, in turn, reported it to Captain McCall, no disclosure was made of the alleged rape until November 29, 1965, at a preliminary hearing on the burglary warrant in the City Recorder's Court of Mecklenburg County. On that occasion, Brooks was being cross-examined by counsel for Wehrle and in the space of two pages of the typed transcript was asked four times, in substance: "Is there anything else you haven't told told us?" After the fourth inquiry, her response·was: "Do I have to tell you?" Upon being told that she was sworn to tell the truth, she then testified that the intruder took advantage of her and seduced her.

Despite extensive use of discovery, counsel for plaintiff have been unable to produce any evidence tending to show in the slightest degree that Brooks requested or suggested that plaintiff be prosecuted for rape. The testimony of Solicitor Downs to the effect that he· acted on his own initiative according to his own judgment and without any influence, control, or suggestion by Brooks in presenting the rape indictment is not controverted by plaintiff. Plaintiff is unable to controvert the affidavit of the solicitor that at no time did Brooks request that he present *either* of the indictments to the Grand Jury, and that he exercised his own judgment and discretion as solicitor without any request, suggestion, direction, or control by Brooks.

Despite the foregoing narrative of undisputed or uncontroverted facts, the ultimate fact remains that Brooks' positive identification of Wehrle as the intruder constituted one of the proximate causes of his prosecution upon two capital felonies. But for her identification of him, there surely could have been and would have been no indictments.

Is proximately causing an indictment the same in law as instituting or procuring or participating in criminal proceedings against Wehrle? I do not think so under the law of North Carolina. The words "participate in" are broad indeed, and, if given a literal interpretation, would include every witness for the prosecution. In Cook v. Lanier, 267 N.C. 166, 147 S.E.2d 910, 913 (1966),

the North Carolina Supreme Court said: "To make out a case of malicious prosecution the plaintiff must allege and prove that the defendant instituted, or procured, or *participated in* (my italics), a criminal prosecution against him maliciously, without probable cause, which ended in failure." In three other cases to which I am advertent the North Carolina Supreme Court has recited the phrase "participated in" as a part of one of the elements of the action for malicious prosecution. Greer v. Skyway Broadcasting Co., 256 N.C. 382, 124 S.E.2d 98 (1962); Dickerson v. Atlantic Refining Co., 201 N.C. 90, 159 S.E. 446 (1931); Bowen v. W. A. Pollard & Co., 173 N.C. 129, 91 S.E. 711 (1917). In *Dickerson*, the court said: "To make out a case of malicious prosecution, the plaintiff is required to allege and prove that the defendant instituted or participated in a proceeding against him maliciously, without probable cause, which ended in failure." Id. 159 S.E. at 449. ("Procured" was left out.)

In numerous other decisions, the phrase "participated in" is omitted, and the court speaks in terms of the defendant having *instituted or procured or continued* a criminal prosecution. See, e.g., Abbitt v. Bartlett, 252 N.C. 40, 112 S.E. 2d 751 (1960); Mooney v. Mull, 216 N.C. 410, 5 S.E.2d 122, 125 A.L.R. 893 (1939); Wingate v. Causey, 196 N.C. 71, 144 S.E. 530 (1928).

■ I think *ejusdem generis* applies to narrow the ordinary meaning of "participation" and relate it to instituting or procuring a criminal prosecution.[1]

There is not one scintilla of evidence in all of the estimated 900 pages I have examined to indicate that Oren Brooks either instituted or procured the prosecution of Richard T. Wehrle. Plaintiff is unable to offer any evidence tending to to show that Brooks even knew Wehrle's name prior to the day she made positive identification of him. Without knowledge of his name, it would not have been easy for her to have suggested him to the police as a suspect; but, whether easy or not, there is not one scintilla of evidence tending to show that she did so. Instead, the evidence tends to show that his name was suggested to the police as a possible suspect by one or more unnamed informers (other than Brooks).

■ Although Brooks' positive identification of Wehrle was one of the proximate causes of the prosecution and the dominant cause, it was not the sole proximate cause. The uncontroverted evidence plainly discloses a series of burglaries in the Foxcroft area, suspicion of at least one informer of the possibility that Wehrle was the intruder, suspicion of a Mrs. Bahakel[2] that Wehrle's voice was possibly similar to the voice of an intruder at her home (in the same neighborhood), plus positive identification of Wehrle by Brooks. These factors, plus the physical evidence of the breaking and entering at Brooks' home, clearly constituted probable cause for the prosecution of Wehrle.

In Bowen v. W. A. Pollard & Co., 173 N.C. 129, 91 S.E. 711 (1917), the court defined probable cause:

"'What is probable cause is a question of law, to be decided by the court upon the facts, as they may be found by the jury.' * * * As a guide to the court it is defined to be '[t]he existence of circumstances and facts sufficiently strong to excite, in a reasonable mind, *suspicion* (my italics) that the person charged with

---

1. That the rule of *ejusdem generis* applies with respect to the use of the phrase "participated in" is evidenced by an examination of the cases employing the phrase. Greer v. Skyway Broadcasting Co. uses the phrase as an element of malicious prosecution and cites three supporting cases—two of which do *not* use the phrase. Dickerson v. Atlantic Refining Co. likewise uses the phrase and cites eight supporting cases —seven of which do *not* mention it. In Bowen v. W. A. Pollard & Co., no supporting citations are given.

2. Another state prosecution was begun based on the Bahakel incident but was nol prossed.

having been guilty was guilty. It is a case of apparent guilt as contra-distinguished from real guilt.' "

Plaintiff's brief, under the heading "The Defendant Instituted or Procured the Institution of the Criminal Proceedings Against Plaintiff"[3], cites only one North Carolina decision in support of the argument: Kelly v. Durham Traction Co., 132 N.C. 368, 43 S.E. 923 (1903). In that case defendant was charged with false imprisonment and malicious prosecution arising out of plaintiff's trial and acquittal under a warrant charging violation of a municipal ordinance enacted to protect defendant in the collection of streetcar fares. In the words of an eye-witness, the streetcar conductor "pointed out" plaintiff and "directed" the policeman to take him, whereupon he was immediately arrested.

Plaintiff cites the Restatement of Torts to the effect that a private person who gives an officer information which he believes is correct and the officer, in his uncontrolled discretion, initiates criminal proceedings based on such information, the informer is not liable as one procuring the arrest, and then relies upon an exception to the rule stated in Comment G to Section 653 of the Restatement: that if the information is known by the giver to be false at the time he gives it to the officer, the rule is otherwise for the reason that if the information is knowingly false the officer is unable to exercise intelligent discretion, and the result is that the prosecution is said to be procured by the person giving false information.

Counsel do not suggest any motivation for Mrs. Brooks' asserted conduct in knowingly and deliberately identifying Wehrle falsely. It is not suggested in the record that she ever knew, or had a grudge against, Wehrle or his family prior to the moment of identification.

Positive identification of a person not previously known to the witness is perhaps the most fearful testimony known to the law of evidence. Seldom are human faces uniquely distinctive to the average observer under stress. Oren Brooks was not even average. Her powers of observation and articulation were so poor that she could not even intelligently describe in terms of density her own draperies hanging in her own bedroom. But, it is one thing to distrust this type of uncorroborated testimony (most judges and lawyers do) and quite another to say that it was knowingly and falsely given. If counsel for plaintiff are correct—that the mere assertion of dishonest testimony raises an issue for the jury—then I think it would necessarily follow that every case of malicious prosecution (where such an assertion is made) would have to be submitted for jury determination and could not be non-suited. In the case at bar, the assumption that Brooks' identification testimony was perjured would accomplish:

(1) Under the Restatement exception, her procurement of prosecution.

(2) Lack of probable cause.

(3) Actual malice.

Nothing would be lacking except favorable termination of the prosecutions—which is admitted.

The structure is too top heavy. All of that can't be supported by a bare assertion of perjury.

Counsel for plaintiff are unable to suggest any evidentiary support for their theory that Brooks perjured herself except the variance in the description of the intruder given by her the night of the burglary and two days later. It is not even clear that she actually gave the first description which appeared on a report in the Police Department. One of the officers present did not hear her give it, and she denies having done so. Both officers agree that she was incoherent to the point that it was impossible to intelligently interview her.

There is much in the record to indicate that Oren Brooks was wrong in her identification of Wehrle—including impres-

---

3. Plaintiff's counsel do not make use of the phrase "participated in".

sive character testimony for Wehrle—but there is nothing to indicate she was *knowingly* wrong.

In a federal court there must be substantial evidence to support a verdict. A scintilla is not enough. A jury will not be permitted to simply jump to a conclusion without evidence. If a special interrogatory were submitted to a jury: "Did Oren Brooks knowingly testify falsely and dishonestly in identifying Richard T. Wehrle as the intruder?" and were answered: "Yes", in my opinion it would have to be set aside. Indeed, I do not believe the evidence would support the submission of such a special interrogatory.

Did Brooks "continue" the prosecution of the indictments? Neither the solicitor nor any police officer has said that she did. There is not one scintilla of evidence in the record to indicate that she urged the continuation of the prosecutions begun. Her son-in-law is the law partner of Frank McClenegan, who appeared in the criminal trial with the solicitor and cross-examined one witness at the solicitor's request. Mr. McClenegan also appeared in one or more of the bond hearings. The affidavits plainly establish that Mr. McClenegan's appearance was out of friendship for his partner and the family of his partner, and that no request that he appear was ever made by Brooks. Mr. McClenegan does not consider that he is employed by Brooks, has submitted no bill to her, does not intend doing so, and has been paid nothing for his appearances. His reputation is known to the court and is that of a person of unimpeachable integrity. But, I do not rest these findings upon credibility: his affidavit is not controverted.

Richard T. Wehrle has failed to establish that there are genuine issues as to the material facts with respect to two essential elements of a cause of action for malicious prosecution. The uncontroverted evidence plainly shows that the defendant did not institute or procure or continue criminal proceedings against him. The uncontroverted evidence plain-ly shows that the prosecution was not without probable cause.

An appropriate summary judgment will be entered in favor of the defendant.