Oren R. Brooks v. Commissioner.
Brooks v. Commissioner
Docket No. 2141-70.
United States Tax Court
T.C. Memo 1971-152; 1971 Tax Ct. Memo LEXIS 180; 30 T.C.M. (CCH) 658; T.C.M. (RIA) 71152; June 24, 1971, Filed F. T. Miller, Jr., 923 Law Bldg., Charlotte, N.C., for the petitioner. J. Randall Groves, for the respondent. IRWIN
Memorandum Opinion IRWIN, Judge: Respondent determined deficiencies in petitioner's income tax for the tax years 1966 and 1967 in the amounts of $13,372.18 and $10,449.96, respectively. The only issue presented is whether certain legal expenses incurred by petitioner in defense of a suit for malicious prosecution are deductible under section 212(2) of the Code. *181 [1] 659 The facts herein are fully stipulated and are found accordingly. Briefly summarized, they are as follows: Petitioner Oren R. Brooks (hereinafter Oren or petitioner) is a resident of Charlotte, N.C., and, for purposes of the petition filed herein, used a business mailing address of 1118 Johnston Building, Charlotte, N.C. Petitioner filed Federal income tax returns for each of the years in issue with the district director of internal revenue service center, Chamblee, Ga.
At about 2:30 a. m. on Tuesday morning, July 27, 1965, petitioner notified the Charlotte, N.C., police that there had been a break-in at her residence. Two police officers responded to her call and arrived at her their arrival they found her in an incoherent and frightened state. She had a small abrasion on her chin and red pressure marks were present on one of her arms between the elbow and shoulder. Within an hour after the arrival of the police officers petitioner left her home and spent the rest of the evening with her physician son. While investigating the premises occupied by petitioner, *182 the officers found footprints in the yard area outside of the sliding doors to her bedroom. There was also evidence that the sliding doors had been disturbed, and that someone had forced his way into petitioner's bedroom. From July 27 until early November petitioner was interviewed several times by Charlotte police officers. Also during this time petitioner examined numerous photographs which had been given to her by the police department in the hope that she would be able to identify the alleged burglar. Finally, on or about November 19, 1966, petitioner reported to the police that she was positively able to identify one of the photographs which had been submitted to her for her examination. The person identified in the photograph was one Richard T. Wehrle (Wehrle). Soon after making this identification, petitioner was asked to attend a "line-up" where she, once again, positively identified Wehrle as the person who had broken into her home. Shortly after this second identification, one of the local police detectives issued a warrant charging Wehrle with the capital felony of burglary. The warrant was not sworn out by petitioner. At the preliminary hearing to determine whether *183 Wehrle was to be indicted for burglary, petitioner testified that the intruder who had entered her home had taken advantage of her and raped her. Following this hearing the solicitor presented an indictment for rape against Wehrle. During the month of January 1966, Wehrle was put on trial in the Superior Court of Mecklenburg County, N.C., and was charged with the capital felonies of burglary and rape. On or about January 14, 1966, Wehrle was acquitted of both charges. On or about March 8, 1966, Wehrle, who by then had become a resident of Iowa, filed suit against petitioner in the United States District Court for the Western District of North Carolina alleging that he had sustained damages arising from petitioner's malicious prosecution of the two capital felonies from which he had been acquitted in the above criminal proceeding. Wehrle's cause of action alleged separate damages arising from the prosecution of each of the counts under which he had been indicted. As to each count, he sought damages in the amount of $1,000,000. [2]
*184 To represent her in the suit brought by Wehrle, petitioner retained Fred B. Helms of the Charlotte, N.C., law firm of Helms, Mulliss, McMillan and Johnston. Wehrle's suit was brought before the Honorable J. Braxton Craven, Jr., who, pursuant to a motion for summary judgment filed on behalf of petitioner, dismissed the complaint brought by Wehrle and taxed him with costs of the proceeding. ( Wehrle v. Brooks, 269 F. Supp. 785 (W.D.N.C. 1966).) The summary judgment entered in favor of petitioner was appealed, by Wehrle's counsel, to the United States Court of Appeals for the Fourth Circuit. In a per curiam opinion, reported at 379 F. 2d 288 (C.A. 4, 1967), the Court of Appeals affirmed the judgment of dismissal entered by the District Court. The legal expenses incurred by petitioner in connection with the suit brought by Wehrle amounted to $26,262.83 during the year 1966, and $19,522.22 during the year 1967. Petitioner deducted these amounts on her United States income tax returns for the years 1966 and 1967, respectively. Petitioner's only income during these years was derived from dividends, interest and miscellaneous sources other than wages. 660 *185 Her total income in 1966 amounted to $46,340.63, of which $38,092.60 was attributable to dividends, and $7,020.44 to interest. Her total income during 1967 amounted to $45,923.40. Of this amount, $38,260.50 was attributable to dividends and $6,809.45 was attributable to interest. Once again we are confronted with the question of whether legal fees incurred by a taxpayer in defending a civil suit for monetary damages are deductible under section 212 of the Code. The guidelines to be followed in resolving this question are set out in section 1.212-1(m), [3] Income Tax Regs., and in the Supreme Court cases of United States v. Gilmore, 372 U.S. 39 (1963), and United States v. Patrick, 372 U.S. 53 (1963). In Gilmore, the taxpayer (T) held a controlling interest in three corporations, *186 each of which was a franchised General Motors dealership. Dividends and salary from these corporations provided him with his major source of income. In a divorce proceeding, T's wife contended that T's holdings in all three corporations were pro tanto community property under California law; and that, to the extent such holdings were community property, she was entitled to more than a one-half interest in such property. T incurred substantial legal expenses in defending his wife's suit. In so doing, his overriding concern was to protect his controlling interest in the three corporations, since if substantial ownership were to pass to his wife, T's position in relation to these dealerships (and, therefore, his principal means of livelihood) would have been very much endangered. Accordingly, after successfully defending his wife's suit, he attempted to deduct the legal expenses attributable thereto under section 23(a)(2) of the 1939 Code [4] (the precursor to what is now section 212 of the 1954 Code). However, after succeeding in the Court of Claims, the deductions sought by T were denied in the Supreme Court. The following excerpt from the Supreme Court's opinion in Gilmore evidences *187 the rationale employed by the Court in reaching its result: The principle we derive from these cases is that the characterization, as "business" or "personal," of the litigation costs of resisting a claim depends on whether or not the claim arises in connection with the taxpayer's profit-seeking activities. It does not depend on the consequences that might result to a taxpayer's income-producing property from a failure to defeat the claim, for, as Lykes teaches, that "would carry us too far" and would not be compatible with the basic lines of expense deductibility drawn by Congress. Moreover, such a rule would lead to capricious results. If two taxpayers are each sued for an automobile accident while driving for pleasure, deductibility of their litigation costs would turn on the mere circumstance of the character of the assets each happened to possess, that is, whether the judgments against them stood to be satisfied out of income- or nonincome-producing property. We should be slow to attribute to Congress a purpose producing such unequal treatment among taxpayers, resting on no rational foundation. *188 Returning to the instant proceeding, petitioner's primary argument - that had she not undertaken the cost of her defense, much of her income-producing property would have been dissipated - looks very much like the unsuccessful position taken by T in the Gilmore case. In summary petitioner's argument appears in pertinent part as follows: During the period from July 27, 1965, to April 5, 1967, * * * [petitioner] was swept up in a series of events over which she had no control * * *, but which constituted serious threats to her property, income and to her very economic life. 661 First, on July 27, 1965, she was robbed - a loss of property by Mrs. Brooks to an intruder who had a "profit-making" motive. She reported the event and her loss to the police and co-operated with them in their efforts to apprehend her burglar. She took a passive role in the proceedings and did not engage counsel or incur any legal expenses. Her stolen property was never recovered. Second, the burglary and its attendant unpleasantries had such a traumatic effect upon her that she was compelled to sell her home. This she did on February 11, 1966, at a monetary loss of $42,096.03 - which was not deductible.
*189 Third, she was sued for damages in the amount of $2,000,000.00 by a claimant seeking reparation which if collected, would have been taxable income to him. The claimant had an obvious "profitmaking" motive. Petitioner, Mrs. Brooks, had an obvious motive of "conservation" of property held for the production of income. At this time practically all of her approximately $2,000,000.00 estate was comprised of income-producing securities that would be lost if she lost the lawsuit. She incurred and paid legal expenses in this third episode of uninvited misfortunes; and she succeeded in conserving her property held for the production of income. In managing, conserving and maintaining the property she has been able to continue receiving income and paying tax thereon. We respectfully submit that it is reasonable to say that if the petitioner had not had the substantial income-producing property as shown on Exhibit 5: (1) the $2,000,000.00 damage suit would not have been brought. (2) if brought, there would have been no reason to defend it. (3) she would not have engaged counsel and incurred the expenses in question. (4) she would not have had the funds to pay the expenses for which *190 the deductions were claimed. Accordingly, Mrs. Brooks' legal expenses were ordinary and necessary expenses incurred in maintaining and conserving her income-producing property and were deductible under Section 212(2) of the Code. In our judgment, while the above argument fairly summarizes the effect of petitioner's legal costs on the preservation of her financial property, it fails to establish the very essential found lacking in Gilmore, i.e., that irrespective of the consequences involved, such expenditures must have had their origin in the management, conservation or maintenance of income-producing property. [6] In any event, as we view the facts of this case, we think it is perfectly clear that the circumstances which engendered the expenditures incurred by petitioner (i.e., the alleged burglary and rape, Wehrle's acquittal, and the subsequent suit for malicious prosecution) were personal in nature, and that any connection between these events and section 212 is solely attributable to the fortuitous element of petitioner's wealth. Accordingly, though we are not unsympathetic to petitioner's plight, we must hold for respondent. *191 Respondent acknowledges that, as a result of the above holding, petitioner will be entitled to income averaging for the year 1966, and that she will be entitled to employ the alternative tax computation for the year 1967. Therefore, Decision will be entered under Rule 50. Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended.↩
2. The fair market value of petitioner's securities holdings on December 31, 1965, totaled $3,010,241.20. On December 31, 1966, the fair market value of these holdings amounted to $1,839,861; and on December 31, 1967, they were worth $1,644,308.50.↩
3. § 1.212-1 Nontrade or nonbusiness expenses. * * * (m) An expense (not otherwise deductible) paid or incurred by an individual in determining or contesting a liability asserted against him does not become deductible by reason of the fact that property held by him for the production of income may be required to be used or sold for the purpose of satisfying such liability.↩
4. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: (a) Expenses. - * * * (2) Non-trade or non-business expenses. - In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income.↩
6. SEC. 212. EXPENSES FOR PRODUCTION OF INCOME. In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year - * * * (2) for the management, conservation, or maintenance of property held for the production of income; * * *↩