**Neeta WEBB, Appellant,**

v.

**Robert E. NOLAN, M.D., Appellee.**

**No. 72–2250.**

United States Court of Appeals,
Fourth Circuit.

Argued May 8, 1973.

Decided Sept. 18, 1973.

Neeta Webb, pro se.

Ralph M. Stockton, Jr., Winston-Salem, N. C. (J. Robert Elster and Hudson, Petree, Stockton, Stockton & Robinson, Winston-Salem, N. C., on brief), for appellee.

Before BRYAN, Senior Circuit Judge, and WINTER and WIDENER, Circuit Judges.

PER CURIAM:

Neeta Webb, pleading she was a resident and citizen of California, sought damages in the District Court from Robert E. Nolan, a resident and citizen of North Carolina, for alleged medical malpractice, laying jurisdiction of the action on diversity of citizenship. After an evidentiary hearing, the trial court, August 28, 1972, sustained the defendant's motion to dismiss, finding the evidence insufficient to establish the plain-

tiff's citizenship elsewhere than in North Carolina when the action was commenced. Plaintiff appeals.

Upon consideration of the briefs, oral argument and the record, this court concludes that the finding of the District Court cannot be held clearly erroneous.

The judgment on appeal is affirmed upon the opinion of the District Judge. Webb v. Nolan, 361 F.Supp. 418 (MDNC 1972).

Affirmed.

WINTER, Circuit Judge (dissenting):

The district court found and concluded that Miss Neeta Webb was not a citizen of California, but was a citizen of North Carolina, and therefore the district court lacked jurisdiction of her suit against defendant, a citizen of North Carolina, because there was not diversity of citizenship. The majority treats this as a finding of fact and concludes that it cannot be held to be clearly erroneous. To me, the finding is not solely one of fact, but rather is a mixed question of fact and law. To the extent that it was factual, I think that the finding was clearly erroneous, and as a legal conclusion I think it was incorrect. I respectfully dissent.

Until July, 1971, there appears to be no dispute that Miss Webb was a citizen of California. She had been born there in 1908, and although living a substantial part of her childhood and early adulthood in North Carolina and elsewhere, she returned to California in 1954 and obtained a teaching position in a California public school. She opened and maintained a bank account with a California bank. She registered to vote in California and had voted there with

substantial regularity. She rented an apartment in California and acquired furniture. She claimed California as the state of her domicile when she filed income tax returns.

After her removal to California, Miss Webb's family continued to live in North Carolina, and it is not disputed that she would return to North Carolina during her summer vacations. After the death of other members of her family, she obtained ownership of the family home in 1961 which she used thereafter for vacations and holidays.

On August 31, 1967 plaintiff sued defendant for malpractice allegedly committed when he undertook to treat her during an earlier occasion when she was in North Carolina. During the trial of the case which began in March, 1971, Miss Webb submitted to a voluntary dismissal. She returned to North Carolina in July, 1971, and remained there to and including March 14, 1972, when she filed the instant case. Her avowed purpose for returning and remaining was to conduct this litigation in which she concluded to proceed *pro se*. She took one year's leave of absence without pay from her California teaching position. Since she was a tenured teacher, she had the right to return to the same position at the same pay the following year.*

When she filed suit on March 14, 1972, she alleged that she was a citizen of California and the defendant a citizen of North Carolina. Her pleadings bore her North Carolina address, and there is no question but that she was then physically residing in the family homestead, a twelve-room house which was largely furnished. When diversity of citizenship was contested, Miss Webb stren-

---

* Although plaintiff appears to be a very intelligent woman, she is relatively unschooled in the law, and effective presentation of her case has suffered. Before the district court she declined to answer a number of interrogatories, the answers to which were highly relevant to the question of her citizenship, and defendant did not seek an order requiring her to answer. The information about her right to return to her California teaching position was extracted from her by questions during oral argument. The same is true with respect to certain of the other factual statements in this opinion. When questioned, she did not seem to demonstrate an awareness of the legal implications of the questions, and her answers to the court's questions were not inconsistent with her pleadings and formal responses to interrogatories to the extent that she answered them.

uously insisted that she had every intention of returning to California, that her North Carolina home was a holiday or vacation house, and that she was still "living" in California. She maintained a bank account in California and had personal property, mostly furniture, stored there. She had also contracted to buy a building lot in California and made a substantial down payment.

The law seems clear that to effect a change of citizenship from one state to another there must be residence in the new domicile and an intention to remain there permanently or indefinitely. The law is clear also that the presence or absence of diversity of citizenship between the parties is to be tested as of the time that suit is filed. Gaines v. Dixie Carriers, Inc., 434 F.2d 52 (5 Cir. 1970); Paudler v. Paudler, 185 F.2d 901 (5 Cir. 1951), cert. den., 341 U.S. 920, 71 S.Ct. 742, 95 L.Ed. 1354 (1951); Pannill v. Roanoke Times Co., 252 F. 910 (4 Cir. 1918); Wehrle v. Brooks, 269 F.Supp. 785 (W.D.N.C.1966) aff'd per curiam 379 F.2d 288 (4 Cir. 1967); Wright, Law of Federal Courts §§ 26, 28 (1970).

The district court found Miss Webb to be a citizen of North Carolina because of the concurrence of the following facts: (1) she returned regularly to North Carolina for vacations; (2) she had a North Carolina physician and a North Carolina address; (3) she had owned a house in North Carolina since 1961 (erroneously stated by the district court to be 1971) and had resided there continually since 1971; (4) every room in the house was furnished to some degree and she listed the house for North Carolina property taxes in 1971 and 1972; (5) she was not employed in California on the date suit was filed nor was she seeking employment there; and (6) although she was not registered to vote in North Carolina, she was eligible to register in that state.

To my mind, these facts do not demonstrate an intention to remain in North Carolina permanently or indefinitely. It would follow that California was not surrendered as the state of citizenship.

Of course a plaintiff's statement of his intention is to be viewed with circumspection and perhaps greater credence given to a plaintiff's acts, because in many instances they are a more reliable indicator of his true state of mind than a mere verbal statement. But in the instant case, the persuasive acts taken by plaintiff are not counter to the conclusion that she had not surrendered California as her domicile in favor of North Carolina. She had not severed connections with California in regard to permanent employment. At the time suit was filed, she was on leave of absence, and she assured us at the argument of this appeal that she had returned to her position in California when school resumed in the fall of 1972 and was teaching there when her case was argued except for the few days that she was required to travel to Richmond for the argument. Although eligible to register to vote in North Carolina, she did not avail herself of this privilege; and she assured us at argument that she had voted in California since the suit was filed. She readily admitted that she had used the North Carolina address when she filed her 1971 federal income tax return, but she offered the reasonable explanation that she was entitled to a refund of overpaid taxes and she wanted the check directed to the place that she was physically present. She maintained her bank account in California, although, quite reasonably, she asked that bank statements be mailed to her in North Carolina. As before stated, she stored personal property in California and continued payments on her acquisition of real estate in that state. Her acts before suit was filed all corroborate her expressed intention not to remain in North Carolina indefinitely or permanently. Her acts after suit was filed provide even greater support for this conclusion, although, standing alone, they could not be given compelling effect to dispel the possibility that a sophisticated litigant might take them improperly to confer jurisdiction.

Miss Webb was physically present in North Carolina when suit was filed; but

**1052**

viewing the legal test of domicile in North Carolina as physical presence coupled with an intention to remain there permanently or indefinitely, I cannot conclude that the record supports a finding of the latter factor. Since I conclude that she remained a citizen of California, I would reverse.